Jack D. HACKATHORN and Bertha J. Hackathorn, Plaintiffs–Appellants,

and

Dale T. Benton, et al., Plaintiffs,

v.

FOUR SEASONS LAKESITES PROPERTY OWNERS ASSOCIATION, INC. and Four Seasons Lakesites, Inc., Defendants–Respondents.

No. 22812.

Missouri Court of Appeals, Southern District, Division One.

March 29, 2000.

Dennis J.C. Owens, Kansas City, for appellants.

Charles E. McElyea, Phillips, McElyea, Walker & Carpenter, P.C., Camdenton, for

respondent Four Seasons Lakesites Property Owners Association, Inc.

John E. Curran, Curran & Clifford, Osage Beach, for respondent Four Seasons Lakesites, Inc.

CROW, Presiding Judge.

This is the second time Jack D. Hackathorn and Bertha J. Hackathorn ("Hackathorns") have tried to obtain appellate review in this case. The first time was *Hackathorn v. Four Seasons Lakesites, Inc.*, 959 S.W.2d 954 (Mo.App. S.D.1998), henceforth referred to as *"Hackathorn–1."* On that occasion, this court dismissed the appeal for lack of an appealable judgment.

That obstacle persists. Consequently, as hereafter explained, the present appeal, like the earlier one, must be dismissed.

*Hackathorn–1* pointed out that for a judgment to be appealable, it must dispose of all parties and all issues in the case, leaving nothing for future determination. *Id.* at 957[3]. The only exception is Rule 74.01(b),[1] which permits an appeal from a judgment that disposes of fewer than all claims or parties if the trial court expressly determines there is no just reason for delay. *Id.* at [4].

As recounted in *Hackathorn–1*, there are multiple claims and parties in this case. Hackathorns joined fourteen other plaintiffs[2] in suing Four Seasons Lakesites, Inc. ("FSL") and Four Seasons Lakesites Property Owners Association, Inc. ("POA").[3] *Id.* at 955 n. 1.

At the time of the trial that spawned the appeal in *Hackathorn–1*,[4] the suit was pending on the plaintiffs' third amended petition. *Id.* at 955–56. It comprised 49 counts.[5] There was also a pending counterclaim. In it, FSL and POA sought "legal fees" and costs against all plaintiffs.

The appeal in *Hackathorn–1* arose from a jury trial of count 3 of the third amended petition. *Id.* at 955. That count was denominated "Intentional Misrepresentation." In it, Hackathorns sought actual and punitive damages from FSL and POA. *Id.*

There were five other counts denominated "Intentional Misrepresentation": 10, 16, 22, 27 and 33. Three other counts were denominated "Fraudulent Misrepresentation": 38, 42 and 46. Counts 10, 16, 22, 27, 33 and 38 were each brought by a separate pair of husband-wife plaintiffs.[6] Count 42 was brought by a single plaintiff, as was count 46.

As reported in *Hackathorn–1*, prior to trial on count 3 the trial court "entered orders for separate trials on other party plaintiffs' counts involving allegations of intentional misrepresentation against [FSL] and POA." *Id.* at 956. This court's examination of the record indicates that order applied to the other five "Intentional Misrepresentation" counts and the three "Fraudulent Misrepresentation" counts (the eight counts enumerated in the preceding paragraph).

At the end of the evidence at the trial of count 3, the court submitted that count to the jury against only FSL.[7] The jury re-

**1.** The current version of Rule 74.01(b), Missouri Rules of Civil Procedure, took effect January 1, 1995.

**2.** Of the sixteen plaintiffs, there were seven husband-wife pairs (one pair being the Hackathorns) and two single plaintiffs.

**3.** *Hackathorn–1* referred to Four Seasons Lakesites Property Owners Association, Inc. as "POA." 959 S.W.2d at 955. For continuity, this opinion adheres to that designation.

**4.** That trial occurred September 24–27, 1996.

**5.** *Hackathorn–1* states the third amended petition contained 48 counts. 959 S.W.2d at 956. The third amended petition, a 112–page document, contains counts numbered 1 through 48; however, there are two counts numbered 24.

**6.** Footnote 2, *supra.*

**7.** *Hackathorn–1* states: "Although not reflected by any docket entry, during pretrial proceedings relating to count 3, [Hackathorns] dropped their claim for intentional misrepresentation against POA." 959 S.W.2d at 955 n. 2.

turned a verdict in favor of FSL. *Id.* at 955. The trial court entered judgment per the verdict.[8] The appeal in *Hackathorn–1* followed.

The primary reason this court dismissed that appeal was that the counterclaim of FSL and POA had not been adjudicated. *Id.* at 956–58. *Hackathorn–1* also pointed out that a "conversion claim" by Hackathorns—count 5—had been "separated for trial purposes" but remained unadjudicated. *Id.* at 956. Additionally, *Hackathorn–1* observed that the "intentional misrepresentation claims" by plaintiffs other than Hackathorns remained unadjudicated.[9] *Id.*

After *Hackathorn–1*, there were further proceedings in the trial court.

On April 14, 1998—after receiving this court's mandate in *Hackathorn–1*—the trial court conferred with counsel for Hackathorns, FSL and POA. A docket entry that date reads: "It was the court's intent to not designate this judgment as final for purposes of appeal."

Counsel for Hackathorns, FSL and POA reappeared in the trial court June 9, 1998. A docket entry that date reads: "Pls Hackathorn dismiss the conversion claim[10] in open court[.]"

Counsel for Hackathorns, FSL and POA appeared anew in the trial court August 14, 1998. A docket entry that date reads: "Court intends to designate Partial Summary Judgment Order[11] as final for purposes of appeal[.]"

On September 25, 1998, Hackathorns appeared in the trial court with counsel; two other plaintiffs—the Freemans—appeared with counsel; the remaining plaintiffs appeared by counsel; FSL appeared by counsel; POA appeared by counsel. FSL and POA presented evidence on their counterclaim.

On December 28, 1998, the trial court signed and filed findings of fact, conclusions of law and a judgment on the counterclaim. As this court understands the judgment, FSL was awarded attorney fees against all plaintiffs in the sum of $36,762.50, and POA was awarded attorney fees against all plaintiffs in the sum of $32,708.45.

The trial court also signed and filed two other documents that date (December 28, 1998). Each is designated "Order." One reads:

> "The Plaintiffs having voluntarily dismissed their Count V for conversion against both Defendants, the Court enters the dismissal of Count V."[12]

The second reads:

> "The Court hereby designates its Order of Partial Summary Judgment on the equitable claims as final for purposes of appeal. The Court finds that there is no just reason for delay of the appeal on these issues."

This court infers the second order refers to the 16–page document identified in footnote 11, *supra.* This opinion henceforth refers to that document as "the 1996 Findings and Conclusions."

---

8.  Whether the cryptic judgment, handwritten on the docket sheet, satisfies the requirements for a judgment in Rule 74.01(a) need not be decided, as a ruling on that issue is unnecessary in disposing of this appeal.

9.  As explained earlier, there were five other "Intentional Misrepresentation" counts and three "Fraudulent Misrepresentation" counts.

10.  This court divines the "conversion claim" referred to in the June 9, 1998, entry is the "conversion claim" referred to in *Hackathorn–1*, 959 S.W.2d at 956, i.e., count 5.

11.  Twenty-five months earlier, on July 26, 1996, the trial court had filed a 16–page document denominated "Findings of Fact and Conclusions of Law." The document was based on evidence heard by the trial court October 30–31, 1995. A docket entry July 26, 1996, reads: "Summary Judgment as to some issues entered per Findings & Conclusions filed."

12.  See footnote 10, *supra.*

As this court fathoms the record, no further activity occurred in the trial court until February 3, 1999, when Hackathorns filed the notice of appeal that brought the present appeal to this court.

The December 28, 1998, judgment on the counterclaim of FSL and POA obviously eliminated one of the barriers to appealability identified in *Hackathorn–1*. Another obstacle was removed by the December 28, 1998, order dismissing count 5. However, other hurdles remain.

■ First, the five "Intentional Misrepresentation" counts and the three "Fraudulent Misrepresentation" counts brought by plaintiffs other than Hackathorns remain unadjudicated. Those eight counts are identified by number earlier in this opinion.

FSL moved to dismiss the present appeal because those eight counts remain unadjudicated.

In response to FSL's motion, Hackathorns asserted that when the trial court severed the five "Intentional Misrepresentation" counts and the three "Fraudulent Misrepresentation" counts brought by the other plaintiffs, "the case of the Hackathorn family functionally became a separate lawsuit." Hackathorns cite no authority for that hypothesis, and this court is aware of none.

Assuming, arguendo, that Hackathorns "dropped" their claim against POA in count 3 during "pretrial proceedings,"[13] and further assuming, arguendo, that the supposed judgment entered upon the jury verdict for FSL on count 3 met the requirements of Rule 74.01(a) for a judgment,[14] the fact remains that the trial court did not confer appealability on such judgment under Rule 74.01(b), as the court made no express determination—as to *that* judgment—that there was no just reason for delay. Such a determination was essential to confer appealability, as the five "Intentional Misrepresentation" counts

and the three "Fraudulent Misrepresentation" counts brought by plaintiffs other than Hackathorns remain unadjudicated. Those eight counts are just as much a part of this lawsuit as count 3.

This court therefore holds that if there be a judgment on Hackathorns' claim against FSL on count 3—an issue this court need not decide—this court lacks jurisdiction to review it because of the eight unadjudicated counts identified in the preceding paragraph.

■ Hackathorns also seek this court's review of the 1996 Findings and Conclusions.

Earlier, this opinion quoted a trial court order of December 28, 1998, which "designates its Order of Partial Summary Judgment on the equitable claims as final for purposes of appeal." This court has already inferred that order refers to the 1996 Findings and Conclusions. Thus, without further inspection, one might assume the 1996 Findings and Conclusions are eligible for appellate review.

As hereafter explained, such an assumption would be amiss.

Nine counts in the third amended petition are labeled "Injunction": 1, 8, 14, 20, 25, 31, 37, 41 and 45. Count 1 was brought by Hackathorns; the other "Injunction" counts were brought by other plaintiffs.

Each "Injunction" count prayed for alternative relief. While the prayers of the "Injunction" counts are not identical, the alternative relief sought in each count was substantially similar. One of the alternatives was rescission of the "Acquisition Agreement"—inferably the contract whereby the complaining plaintiffs (or plaintiff) bought a parcel of land from FSL. That relief would require FSL to return the sale price to the complaining plaintiffs (or plaintiff). The other alternative was an injunction barring FSL and

---

**13.** Footnote 7, *supra*.

**14.** Footnote 8, *supra*.

POA from preventing the complaining plaintiffs (or plaintiff) from placing boat docks in the lake or attaching docks to certain "common" areas.

The issues addressed in the 1996 Findings and Conclusions are identified therein as follows:

"Did the P.O.A. Board of Directors have authority to pass the Resolution forbidding the placement of boat docks on "A" and "B" lots; is the Board's action arbitrary and capricious; is the resolution valid; was the Board properly constituted that passed the resolution and are the Plaintiffs entitled to injunctive relief?"

The 1996 Findings and Conclusions neither grant nor deny relief on any of the nine "Injunction" counts. Nonetheless, the parties appear to believe the 1996 Findings and Conclusions adjudicated those counts.

While it is inferable that the 1996 Findings and Conclusions indicate the trial court concluded injunctive relief was unwarranted, this court is unwilling to assume the 1996 Findings and Conclusions mean the trial court also intended to deny the alternative relief of rescission. If the trial court meant to deny all relief sought in the nine "Injunction" counts, the trial court could have prevented this court's quandary by including in the 1996 Findings and Conclusions a segment adjudicating those counts in favor of FSL and POA.

Consequently, if this court be correct in assuming the 1996 Findings and Conclusions pertain to the nine "Injunction" counts, the 1996 Findings and Conclusions are ineligible for appellate review, as they fail to fully adjudicate those counts.

There is another reason the 1996 Findings and Conclusions are ineligible for appellate review.

The 1996 Findings and Conclusions are not denominated a judgment, and the word judgment appears nowhere therein. Consequently, the 1996 Findings and Conclusions do not satisfy the requirements for a judgment in Rule 74.01(a).[15] *Chambers v. Easter Fence Co., Inc.*, 943 S.W.2d 863, 865–66 (Mo.App. E.D.1997).

Hackathorns also seek this court's review of the judgment on the counterclaim of FSL and POA.

This court is unable to locate anyplace where the record shows the trial court conferred appealability on that judgment under Rule 74.01(b) by expressly determining there was no just reason for delay.

This court therefore holds that none of the trial court's rulings upon which Hackathorns seek review in the present appeal are eligible therefor.

Obtaining appellate review in this case should be neither difficult nor mysterious. The only requirement is a judgment adjudicating all of the counts the trial court intends to adjudicate. If some counts remain unadjudicated, appealability can be conferred by the simple step in Rule 74.01(b). To enable the parties and this court to identify all of the counts that have been disposed of, as well as those that remain pending, the judgment should also identify—by number—all of the counts that have been dismissed.[16]

There should be one judgment meeting the requirements in the preceding paragraph.[17]

Appeal dismissed.

---

**15.** The version of Rule 74.01(a) in force when the 1996 Findings and Conclusions were filed was the version in Missouri Rules of Civil Procedure (1996).

**16.** This court gleans from the record that sundry counts labeled "Negligent Misrepresentation" and other counts labeled "Negligence" were dismissed by the plaintiffs before the jury trial on count 3. This court further divines that sundry other counts, some labeled "Tortious Interference with Contract and with Prospective Advantage," were dismissed by the trial court for failure to state a cause of action.

**17.** The absence of such a judgment in the existing record sent this court on an operose search through the massive record in an effort to determine whether it had appellate

SHRUM and MONTGOMERY, JJ., concur.

PARRISH, J., recused.

jurisdiction. *See: Skalecki v. Small,* 951 S.W.2d 342, 347 n. 7 (Mo.App. S.D.1997). As wryly observed by POA in a notable under-statement: "POA would agree that the record in this case is not as clean as it should be."