In re the MARRIAGE OF Sohail SAID and Brenda Said.

Sohail Said, Appellant,

v.

Brenda Said, Respondent.

No. 23362.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 14, 2000.

James L. Thomas, Waynesville, for appellant.

Richard Anthony Skouby, Meramec Area Legal Aid Corp., Rolla, for respondent.

CROW, Judge.

Sohail Said appeals from a judgment dissolving his marriage to Brenda Said. His sole point relied on avers the trial court erred as a matter of law when it

dismissed Count III of his amended petition. In that count, Sohail[1] prayed for custody of Brenda's two children, neither of whom was sired by him.

The parties married July 2, 1988.

Two children were born to Brenda during the marriage: A____, born September 13, 1988, and C____, born February 24, 1992. A "paternity test," the date of which is unrevealed in the record, established that Sohail is "not the natural father" of either child.

In his amended petition, Sohail pled in Count III that he "has bonded with the minor children, that he is of good moral character, and that he has sufficient income to care for and properly maintain and educate said minor children and give [them] proper training." Count III further pled that because Brenda is "unfit," the court should award "primary custody" of the children to Sohail.[2]

Sohail's amended petition named Brenda as "Respondent" and Joseph Scott Snyder as a "Third Party Defendant."[3]

Sohail's lawyer arranged for service by mail on Snyder, a Texas resident. The trial court's "case history" sheet shows service by registered mail was achieved June 15, 1999.

Brenda moved the trial court to dismiss Count III of Sohail's amended petition, averring *inter alia* that a "court order from the State of Virginia" declared Snyder to be C____'s father. Consequently, pled Brenda, the trial court "has no jurisdiction over the paternity or custody of [C____] in this action for dissolution of marriage."

Brenda's motion pointed out that C____ was born February 24, 1992. The motion then alleged: "[Sohail] had gone to Pakistan in 1990 and remained there for seven . . . years, and during that time he had no physical contact nor sexual relations with [Brenda]."

As to A____ (the eldest child), Brenda's motion pointed out that A____ was born some two months after the parties married. The motion then averred that Sohail "has admitted that the parties never [had] sexual relations before they were married."

The trial court conducted a hearing July 7, 1999, on Brenda's motion. Sohail and Brenda appeared by their respective lawyers. The children appeared by their guardian ad litem ("GAL"), a lawyer.

Brenda's lawyer told the trial court that A____'s birth certificate named no father. Sohail's lawyer conceded that was true. Brenda's lawyer also told the trial court that Sohail had "taken [A____] home to Pakistan for a long time," but there is "no legal tie between them."

As to C____, Brenda's lawyer insisted the Virginia court adjudicated "custody, visitation, and support." Furthermore, argued Brenda's lawyer, the "blood tests" were unchallenged and proved Sohail was not "the biological father" of either child. Consequently, Brenda's lawyer maintained the trial court had no jurisdiction to award custody of either child to Sohail.

Sohail's lawyer argued the Virginia court order is not binding on Sohail because "he wasn't a party in it . . . he was not served in the case in Virginia." Furthermore, declared Sohail's lawyer,

---

1. For brevity and clarity, this opinion refers to the litigants by their respective forenames. No disrespect is intended.

2. Count I of Sohail's amended petition prayed for dissolution of the marriage and other relief. Count II of Sohail's amended petition sought *adoption* of Brenda's two children. The trial court dismissed Count II before trial. Sohail assigns no error in this appeal regarding that ruling.

3. Snyder was not named as a party in Sohail's original petition. Apparently, Sohail named Snyder a "Third Party Defendant" in the amended petition because Sohail learned Snyder is C____'s father, as shall appear *infra*. Parenthetically, this court notes Snyder did not meet the requirements for a third-party defendant in Rule 52 .11, Missouri Rules of Civil Procedure (1999).

§ 452.375.5(5), RSMo Cum.Supp.1998, vested the trial court with jurisdiction to award Sohail custody of the children. Section 452.375.5 reads:

"Prior to awarding the appropriate custody arrangement in the best interest of the child, the court shall consider each of the following as follows:

. . .

(5) Third-party custody or visitation:

(a) When the court finds that each parent is unfit, unsuitable, or unable to be a custodian, or the welfare of the child requires, and it is in the best interests of the child, then custody, temporary custody or visitation may be awarded to any other person or persons deemed by the court to be suitable and able to provide an adequate and stable environment for the child. Before the court awards custody, temporary custody or visitation to a third person under this subdivision, the court shall make that person a party to the action;

(b) Under the provisions of this subsection, any person may petition the court to intervene as a party in interest at any time as provided by supreme court rule."

Sohail's lawyer declared that because Sohail was not "the natural parent" of either child, he was a "third person" within the meaning of the above statute, hence the statute empowered the trial court to award him custody.

On August 2, 1999, the trial court filed an order containing a finding that "there is a valid Court Order from the State of Virginia declaring Joseph Snyder to be the father and Brenda Said to be the mother [of C___]." The trial court ruled it "must give full faith and credit to the Decree of the Court in Virginia." Accordingly, the trial court held it is "without jurisdiction to hear ... the request of ... Sohail ... as to changes in custody involving [C___]."

As to A___, the August 2, 1999, order noted "DNA testing" had determined there is no chance that Sohail is the natural father of A___, that Sohail is not on A___'s birth certificate, and that Brenda has avowed Sohail is not A___'s natural father. The trial court therefore concluded it had no jurisdiction "under Chapter 452 to hear and determine custody issues as ... requested by [Sohail] under his amended petition."

Consistent with the conclusions in the two preceding paragraphs, the August 2, 1999, order dismissed Count III of Sohail's amended petition.

On August 9, 1999, Snyder, represented by counsel, filed a motion asking the trial court for leave to intervene.[4] The motion was accompanied by a motion to modify, the salient averments of which are set forth below.[5]

On August 10, 1999—the day after Snyder filed his motion for leave to intervene and motion to modify—the following people appeared in the trial court: Sohail and his lawyer, Brenda and her lawyer, the GAL, and Snyder's lawyer. The trial

4. Why Snyder sought leave to intervene when he was already named a "Third Party Defendant" in Sohail's amended petition is unexplained in the record. Perhaps Snyder realized he did not meet the criteria for a third-party defendant (footnote 3, *supra* ), and wanted to ensure he would nonetheless be a party.

5. Snyder's motion to modify pled that on November 10, 1993, an "Order of Custody and Visitation" was entered by the Juvenile and Domestic Relations District Court of the City of Virginia Beach, Virginia; that Snyder is currently a resident of Delton, Texas; that Brenda "fled Virginia Beach, Virginia with [C___] without consent of [Snyder] or prior approval of the Court sometime during the month of August, 1997"; that C___ has on various occasions thereafter "been under the supervision of the Pulaski County [Missouri] Division of Family Services and/or the Pulaski County Juvenile Office"; that it is in C___'s best interest for the trial court to award "primary physical custody" to Snyder; that the trial court has jurisdiction to do so because Missouri has been C___'s home state for the past six months.

court heard testimony from Sohail and Brenda.

Sohail confirmed that the "paternity test" showed he did not sire either A____ or C____. Nonetheless, when asked by his lawyer whether he wanted the court to award him "primary care and custody of [A____]," Sohail answered, "That's correct."

When Brenda testified, Sohail's lawyer, during cross-examination, asked who fathered A____. Brenda replied: "I still at this point cannot say, because that was at a point to where I went through some . . . mental or hurtful pain through the father, and I cannot remember his name. I did not write it down or anything, because I thought things were going to work out between me and Sohail, as to letting him be the father."

After hearing the parties' testimony, the trial court took up Snyder's motion to intervene.

Sohail's lawyer protested that allowing Snyder to intervene would prejudice Sohail "with regard to the appeal, and would muddy and cloud the issues." Sohail's lawyer continued, "[W]ith the intervention and a continuation of this suit, I'm afraid that the Court of Appeals might bump it back for final order."

The trial court asked Brenda's lawyer and the GAL whether they objected to Snyder's intervention. Neither did.

The trial court granted Snyder's motion to intervene, whereupon Brenda's lawyer moved that the issues between Brenda and Snyder "be separated pursuant to [Rule] ·66.02." [6]

The trial court declared it would order the clerk "to set up a separate file as to the motion to intervene by the third party."

On November 5, 1999, the trial court filed an order stating, *inter alia,* that the issues between Brenda and Snyder regarding C____ are "now pending as a separate action in the Circuit Court of Pulaski County." The order further stated there were no pleadings which would allow Sohail "to intervene in any manner involving the custody of [C____]."

As to A____, the trial court's order of November 5, 1999, contained a finding that Sohail, as a matter of right, "may petition to intervene under Section 452.375–5(5)(d) RSMo." [7] The order asserted the trial court had authority to allow Sohail to intervene. However, continued the order: "[I]t is discretionary with the court. Based on [Brenda's] evidence submitted at the hearing on [her] Motion to Dismiss, which evidence included the fact that [Sohail] left the United States with [A____] for seven years without consent of [Brenda] and without the benefit of any court order, the court determines that conduct, in and of itself, is sufficient for this court to exercise its discretion to not allow [Sohail] to intervene at this stage of the proceedings."

Despite that conclusion, the trial court's order of November 5, 1999, provided: "[T]his court still retains jurisdiction under this statute. The fact remains that if the court finds [Brenda] to be unfit, unsuitable or unable to be a custodian, it may allow [Sohail] to be a party at that time."

On November 16, 1999, the trial court signed a judgment dissolving the marriage of Sohail and Brenda. The judgment contained a finding that there were no children born of the marriage; consequently,

---

**6.** Rule 66.02, Missouri Rules of Civil Procedure (1999), has remained unchanged since 1973. It reads:

"The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or 'of any number of claims, cross-claims, counterclaims, third-party claims, or issues."

**7.** There is no "Section 452.375–5(5)(d)" in RSMo Cum.Supp.1998. The trial court may have intended to cite § 452.375.5(5)(a) and (b), RSMo Cum.Supp.1998, quoted earlier in this opinion.

the judgment said nothing about child custody or support.

Sohail brings this appeal from that judgment. His sole point relied on is:

"The trial court erred, as a matter of law when it dismissed Appellant's Count III for custody pursuant to section 452.375.5(5), RSMo. in that the Appellant, a step-parent, is a third person entitled to bring a cause of action for custody under section 452.375.5(5), RSMo., and his pleadings were sufficient to state a cause of action."

Brenda filed a brief in response to Sohail's brief. In her brief, Brenda did not question the appealability of the judgment. Nonetheless, as explained below, this court must, *sua sponte,* determine whether the judgment is appealable.

 A prerequisite to appellate review is that there be a final judgment. *Committee for Educational Equality v. State,* 878 S.W.2d 446, 450[3] (Mo. banc 1994). If the trial court's judgment is not final, the appellate court lacks jurisdiction and must dismiss the appeal. *Gibson v. Brewer,* 952 S.W.2d 239, 244[3] (Mo. banc 1997). An appealable judgment resolves all issues in a case, leaving nothing for future determination. *Id.*

Rule 74.01(b), Missouri Rules of Civil Procedure (1999), authorizes a trial court to enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. No such determination appears in the judgment appealed from here.

 When the trial court entered the judgment, there was an unresolved issue between Brenda and Snyder regarding custody of C____. Obviously, before reaching Sohail's claim of error, this court must determine whether, because of that pending issue, the judgment lacks finality and hence is unappealable.

This court approaches that issue by recognizing that Snyder is C____'s father and was awarded significant periods of physical custody by the Virginia court in 1993. Snyder's apparent purpose in seeking to intervene in the trial court was to gain "primary physical custody" of C____.

 Obviously, the contest for custody of C____ will be between Snyder and Brenda, C____'s parents. Sohail has no cognizable claim to be C____'s custodian (or A____'s custodian, for that matter). When the evidence established that Sohail was not the father of either child born to Brenda during the marriage, there was no custody issue between him and her to be decided in this dissolution action.

This court does not ignore Sohail's averment that Brenda is "unfit." However, Sohail's amended petition contains no averment that Snyder is unfit. Consequently, if the trial court finds Brenda unfit to be C____'s custodian, the trial court has the alternative of awarding full-time physical custody to Snyder, C____'s father.

It is thus manifest that the issue of C____'s custody involves only Snyder and Brenda; the issue is not one the trial court had to resolve in order to adjudicate all of the issues between Sohail and Brenda. Because that issue was foreign to the dissolution action, the trial court ordered that said issue become "a separate action in the Circuit Court of Pulaski County." The specific steps taken by the trial court to transform the custody contest between Snyder and Brenda over C____ into "a separate action" are not revealed in the record; however, it is inferable that the trial court did not merely order a separate trial of that issue under Rule 66.02 (footnote 6, *supra* ), but instead ordained that the custody dispute be identified in the court records as a separate case, independent of the dissolution action between Sohail and Brenda.[8]

8. *That would be consistent with the caption on Snyder's motion to modify. It shows the* title of the action as: "Joseph Scott Snyder, Petitioner, vs. Brenda Said, Respondent."

Accordingly, although Snyder was allowed to "intervene" in the instant case on August 9, 1999, it appears that in the end, the custody contest between him and Brenda over C⎯ was treated as it should have been all along—a separate action between them, not a claim to be adjudicated in the instant case.[9] This court therefore holds that in the bizarre circumstances presented by this record, there is no unadjudicated claim between the only two parties to the instant case—Sohail and Brenda. That being so, the judgment is final and appealable.[10]

■ That brings this court to Sohail's complaint that the trial court erred in dismissing Count III. Sohail's theory of error, as this court divines it, is that he is a "third person" within the meaning of § 452.375.5(5)(a), hence he was entitled to bring Count III seeking custody of A⎯ and C⎯.

This court finds no merit in that hypothesis. The second sentence of § 452.375.5(5)(a) specifically provides that before a court awards custody, temporary custody or visitation to a third person, the court shall make that person a party to the action. Because a husband and wife are always parties to an action to dissolve their marriage, the statutory requirement that the court make the third person a party to the action indicates the General Assembly did not intend that the term "third person" include a husband or wife in a dissolution action. As Brenda tersely points out: "Logic dictates that [Sohail] cannot be both the Petitioner and a third person in the same case."

Additionally, one of the requirements in § 452.375.5(5)(a) for awarding custody to a third person is a finding by the court that each parent is unfit, unsuitable, or unable to be a custodian. Count III of Sohail's amended petition pled Brenda is unfit, but this court finds no averment anywhere in Sohail's amended petition that A⎯'s father (whoever he is) and C⎯'s father (Snyder) are unfit, unsuitable, or unable be custodians of their respective children.[11] Consequently, Sohail's amended petition lacks the requisite allegations for a custody claim under § 452.375.5(5)(a).

■ Furthermore, where one party to a dissolution action is the parent of a child and the other party to the action is not the child's other parent, there will frequently be an existing court order establishing custody rights between the parents. That is true here in regard to C⎯, where the 1993 Virginia court order declared the custody rights of Brenda and Snyder. Nothing in § 452.375.5(5)(a) suggests the General Assembly intended to authorize Sohail to (1) challenge Brenda's and Snyder's fitness to be custodian of C⎯ in this disso-

Sohail is not mentioned anywhere in Snyder's motion to modify.

9. The uncertainty in the trial court about how to treat Snyder may have originated when Sohail named Snyder a "Third Party Defendant" in Sohail's amended petition. An attentive reader will note the irony in Sohail naming Snyder a "Third Party Defendant" and later objecting when Snyder sought to intervene.

10. Because the custody contest between Snyder and Brenda is pending as a separate action in the trial court, not as an untried claim in the instant case, the instant case differs from *Hackathorn v. Four Seasons Lakesites*, 15 S.W.3d 37 (Mo.App. S.D.2000). There, in a suit with multiple claims and multiple parties, the trial court severed one

count from the other counts, then tried the severed count and entered judgment on it. The judgment did not adjudicate the other counts, nor did it invoke Rule 74.01(b) by containing an express determination that there was no just reason for delay. This court held the judgment unappealable, as it did not dispose of the unadjudicated counts. *Id.* at 40[1]. When the trial court entered the judgment from which Sohail brings this appeal, there were no unadjudicated claims in the instant case, as the custody contest between Snyder and Brenda over C⎯ was pending as a separate action (to which Sohail was not a party).

11. Nothing in the record indicates A⎯'s father knows A⎯ exists, hence it is possible A⎯'s father did not knowingly abandon A⎯.

lution action, or (2) obtain an order from the trial court in this dissolution action overriding the existing custody order regarding C____. If Sohail believes he can prove Brenda and Snyder are unfit to be C____'s custodian, Sohail can seek to intervene in Snyder's pending action against Brenda to modify the existing custody order regarding C____.[12]

Emphasizing that the conclusions reached in this opinion are based on the extraordinary facts set forth in it, this court, for the reasons in the three preceding paragraphs, holds the trial court did not err in dismissing Count III of Sohail's amended petition.

Judgment affirmed.

PREWITT and GARRISON, JJ., concur.

---

12. There may be a complicating factor in that action. The record indicates that although A____ and C____ were in Brenda's physical custody at time of trial, both children were in the "legal custody" of the Pulaski County Division of Family Services pursuant an order of the Juvenile Division of the Circuit Court of Pulaski County. How that circumstance might affect Snyder's action to modify the existing custody arrangement regarding C____ in the Virginia court order is a subject about which this court need not speculate.