

# SUPREME COURT OF MISSOURI
## en banc

JEANNIE E. HARPER, )
)
    Respondent, )
)
v. )
)
SPRINGFIELD REHAB AND HEALTH )
CARE CENTER/NHC HEALTH, )
)
    Appellant, )
)
PREMIER GROUP INSURANCE )
COMPANY CORVEL ENTERPRISE )
COMPANY, INC. (TPA), )
)
    Appellant, )
)
and )
)
TREASURER OF MISSOURI AS )
CUSTODIAN OF THE SECOND INJURY )
FUND, )
)
    Respondent. )

*Opinion issued November 21, 2023*

No. SC100006

**APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION**

      Springfield Rehab and Health Care Center/NHC Health and Premier Group

Insurance Company Corvel Enterprise Company, Inc. (TPA) (collectively, "Springfield

Rehab") appeal a labor and industrial relations commission ("commission") final award

affirming and adopting the administrative law judge's award of permanent total disability benefits to claimant Jeannie Harper under the Missouri Workers' Compensation Law. Because the commission's decision that Harper suffered a compensable injury arising from a workplace accident and awarding her permanent and total disability benefits was supported by competent and substantial evidence, this Court affirms.

## Factual and Procedural Background

Jeannie Harper worked in nursing for more than 30 years. In 2013, Harper left the workforce following neck surgery that left her unable to walk.[1] She eventually recovered and regained the strength to walk independently.

By June 2018, Harper had returned to work and was employed as a nurse at Springfield Rehab. Her duties included calling doctors, talking to hospitals, walking hallways to check on patients, and distributing medications. Medications were distributed to patients at Springfield Rehab using two different-sized wheeled carts. Harper, 67 years old at the time, used the smaller cart dedicated to diabetic patients and not the larger cart, which weighed approximately 100 pounds.

Around midnight on June 22, 2018, Harper was answering call lights and attending patient rounds. While she was leaving a patient's room, she encountered the larger medical cart angled from the wall into the hallway. Sensing a hazard to patients, she forcefully pushed the cart against the wall using her hips and back. At that moment, she experienced a pull in her back. She continued working, but the pull she experienced in her back began

---

[1] Harper underwent neck surgery after developing unusual neck pain in 2013 that may have been related to previous motor vehicle accidents.

2

causing her discomfort. By the end of her shift, she was experiencing nagging pain and had trouble walking.

The next day, Harper woke up with increasing pain. She had considerable difficulty finishing her next work shift and reported the injury to her supervisor the following Monday. On June 26, 2018, Harper was seen by Dr. Ernesto Carampatan at Dr. Gil's ImMEDiate Care & Occupational Care Center ("Dr. Gil's Immediate Care"). According to Dr. Carampatan's notes, Harper stated she had pushed a medical cart against a wall and, upon so doing, felt a pull in her lower right back and now had severe back pain made worse by walking. After examination, Dr. Carampatan diagnosed Harper with strain of the muscle, fascia and tendon of the lower back, and Harper was prescribed medication for pain and muscle spasms. On June 29, Dr. Gilbert Mobley at Dr. Gil's Immediate Care recommended physical therapy and limited Harper to a 10-pound lifting restriction.

Harper's symptoms did not improve and she experienced continued pain and difficulties with walking. Imaging ordered by Dr. Mobley and conducted on August 17, 2018, showed damage to the lumbar area of her spine. Harper remained employed at Springfield Rehab, but she often called in to work to report she could not get out of bed. When she did make it in, she struggled or failed to complete her rounds and other duties. Unable to fulfill her work responsibilities and care for patients at Springfield Rehab, Harper finally terminated her employment in November 2018. She last received medical care through Springfield Rehab in August 2018 but continued seeking private medical treatment and pain management throughout 2018 and 2019.

In December 2018, Harper filed a claim for workers' compensation. At a hearing before an administrative law judge ("ALJ"), Harper testified about the above events, including feeling a "pull" in her back at the moment she pushed the medical cart. She testified she has continual pain in her back and legs, requiring her to frequently lie down or sit down for most of the day to adjust her body to ease the pain.

Harper also presented testimony from Dr. Brent Koprivica, who examined her in July 2019. Dr. Koprivica testified Harper suffered an injury from the cart incident that resulted in enhanced narrowing and constriction of the spinal column, causing new pain generators in the low back that Harper did not have before the incident, as well as other indicia of injury. He testified the imaging from August 2018 showed a relative amount of narrowing and constriction greater than that found in imaging from August 2013. Dr. Koprivica opined the cart incident injury was the prevailing factor in Harper's injury and disability development based on the imaging and other factors at issue. He concluded Harper has 25 percent permanent partial disability to the body as a whole as a result of her workplace injury and is totally disabled due entirely to the workplace injury given her limitations and need to lie down unpredictably.

Springfield Rehab responded with testimony from Dr. Russell Cantrell, who had examined Harper in December 2019. Dr. Cantrell opined Harper suffered from low back pain caused by preexisting degenerative disk disease, and Harper did not experience an identifiable traumatic event or unusual strain on June 22, 2018, that was the prevailing factor causing her symptoms. He concluded Harper has 30 percent permanent partial disability related to her preexisting disability.

4

Both parties also presented competing testimony from vocational experts. Springfield Rehab presented testimony from Bob Hosutt, a rehabilitation counselor. Hosutt interviewed Harper and reported she would be unable to return to the physically demanding work she performed as a traditional patient care nurse, but he believed she could work in a number of related occupations. Harper presented testimony from Phillip Eldred, also a rehabilitation counselor. Eldred noted Harper's limitations and advanced age and concluded she was functioning at less than sedentary work level, was unable to perform any of her past work, and was unemployable in the open labor market.

Following the hearing, the ALJ issued an award finding Harper credible. The ALJ found she suffered a compensable work injury resulting from an accident in the course of her employment and was permanently and totally disabled entirely as a result of the work accident.[2] In her award, the ALJ noted she found Dr. Koprivica's opinions more credible than Dr. Cantrell's opinions because the former "were based on a more accurate history of the injury, a comparison of objective imaging studies, and his examination." The ALJ also found Mr. Eldred credible. Based on the evidence presented, the ALJ awarded Harper lifetime permanent total disability ("PTD") benefits and future medical care as necessary to address the work injury. The commission, thereafter, issued a final award affirming and adopting the ALJ's award, finding the ALJ award was supported by competent and

---

[2] The ALJ found Harper reached maximum medical improvement when she was released from Dr. Gil's Immediate Care on August 22, 2018.

substantial evidence and was made in accordance with Missouri Workers' Compensation Law ("the Act"). Springfield Rehab appeals.[3]

## Standard of Review

On appeal, this Court reviews decisions by the commission to ensure they are "supported by competent and substantial evidence upon the whole record." Mo. Const. art. V, sec. 18. The commission's decision will be affirmed unless the Court finds: (1) "the commission acted without or in excess of its powers"; (2) "the award was procured by fraud"; (3) the commission's factual findings "do not support the award"; or (4) "there was not sufficient competent evidence in the record to warrant the making of the award." Section 287.495.1.[4]

> The constitutional standard ("supported by competent and substantial evidence upon the whole record") is in harmony with the statutory standard ("sufficient competent evidence in the record"). A court must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence. Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record. An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence.

*Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222-23 (Mo. banc 2003) (internal quotation omitted). "This Court must defer to the [c]ommission's findings on issues of fact, the credibility of the witnesses, and the weight given to conflicting evidence." *Greer v. SYSCO Food Servs.*, 475 S.W.3d 655, 664 (Mo. banc 2015). Questions of law, however,

---

[3] This Court has jurisdiction under article V, section 10 of the Missouri Constitution.
[4] All statutory references are to RSMo 2016 unless otherwise indicated.

are reviewed *de novo*. *Id*. "This Court is not bound by the [c]ommission's interpretation and application of the law, and no deference is afforded to those determinations." *Id*.

**The record contains competent and substantial evidence Harper experienced a workplace accident as required for an award of PTD benefits**

In its first point relied on, Springfield Rehab appears to argue the commission erred awarding Harper PTD benefits under the Act because the record does not contain competent and substantial evidence she experienced a workplace accident as required for such an award.[5] Under the Act, an employer is liable to provide compensation pursuant to

---

[5] Springfield Rehab's points relied on fail to comply with Rule 84.04. However, "this Court has discretion to review noncompliant points gratuitously, overlooking the technical deficiencies in the points relied on, when the deficiencies do not impede review on the merits." *Lexow v. Boeing Co.*, 643 S.W.3d 501, 508 (Mo. banc 2022). To the extent the Court can discern Springfield Rehab's first, third, fourth, and sixth points relied on, it addresses those points as it interprets them below. The Court declines, however, to address Springfield Rehab's noncompliant second and fifth point relied on. In addition to being noncompliant with Rule 84.04, neither of these points relied on appears to raise a cognizable legal basis for reversing the commission's final award. Springfield Rehab's second point relied on does not allege any error made by the commission but merely asks this Court to provide additional guidance for complying with Rule 84.04(d). This Court does not have authority to issue advisory opinions. *Graves v. Mo. Dep't of Corr., Div. of Prob. & Parole*, 630 S.W.3d 769, 774 (Mo. banc 2021). Springfield Rehab's fifth point relied on appears to argue that, if this Court finds Harper is entitled to an award for her work injury, the Second Injury Fund ("Fund") should also be held liable because the only reasonable and logical conclusion is the commission's finding of PTD was the result of Harper's work injury and preexisting disabilities. As stated by this Court, however, "[w]hether a claimant is permanently and totally disabled and whether that claimant is entitled to PTD benefits from the Fund [under the Act] are entirely distinct questions." *Klecka v. Treasurer of Mo.*, 644 S.W.3d 562, 567 (Mo. banc 2022). Springfield Rehab fails to recognize this distinction. Other than generally referencing legislative purpose, statutory construction, and the inequities of finding it solely responsible for Harper's PTD, Springfield Rehab's point relied on and argument does not specify or assert how the commission erred finding Harper had no qualifying preexisting disability necessary for Fund liability under the Act. *See generally Treasurer of Mo. v. Parker*, 622 S.W.3d 178, 181 (Mo. banc 2021) (noting the legislature, in 2013, limited Fund liability under the Act

7

the terms of the Act for an employee's personal injuries by an accident arising out of and in the course of the employee's employment. Section 287.120.1. Pursuant to section 287.020.2:

> The word **"accident"** as used in this chapter shall mean an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift. An injury is not compensable because work was a triggering or precipitating factor.

Springfield Rehab argues Harper could not have endured an accident as defined in section 287.020.2 in that there is no evidence the cart incident "produc[ed] at the time objective symptoms of an injury caused by [the incident.]" This argument fails. Harper testified she felt an immediate pull in her back upon forcefully pushing the cart with her hips and back. As the ALJ noted, this testimony was consistent with Dr. Carampatan's office notes of Harper's initial complaint a few days after the incident. "A claimant's credible testimony … can constitute competent and substantial evidence[,]" *Big Boy*, 121 S.W.3d at 223-24, and the commission's award found Harper's testimony credible. "This Court must defer to the [c]ommission's findings on … the credibility of the witnesses[.]" *Greer*, 475 S.W.3d at 664.

Moreover, the commission found Dr. Koprivica's testimony credible. Dr. Koprivica testified the August 2018 imaging revealed indicia of injury he believed resulted from the

---

in section 287.220.3 by requiring employees to have a qualifying preexisting disability to make a compensable PTD claim against the Fund). Springfield Rehab's point relied on and argument does not challenge this ruling. Accordingly, Harper's motion to dismiss Springfield Rehab's appeal for briefing deficiencies is sustained in part as to Springfield Rehab's second and fifth points relied on and overruled in part as to Springfield Rehab's first, third, fourth, and sixth points relied on.

8

workplace incident Harper described.  Harper's testimony and the imaging findings as interpreted by Dr. Koprivica constitute competent and substantial evidence for finding Harper suffered, at the time she forcefully pushed the medical cart with her hips and back, objective symptoms of an injury caused by the incident.  Competent and substantial evidence, therefore, supports finding Harper suffered an accident within the meaning of section 287.020.2.  Point one is denied.

In its third point relied on, Springfield Rehab relatedly contends Harper did not experience an accident in that she did not experience an "unusual strain" within the meaning of section 287.020.2.  This argument fails, as there is competent and substantial evidence Harper experienced unusual strain in forcefully pushing the medical cart in that the push resulted in the pull in her back and increasing pain as discussed above.  Point three is denied.

**The record contains competent and substantial evidence Harper is permanently and totally disabled and her PTD arose from her workplace accident**

In its fourth point relied on, Springfield Rehab argues the commission erred awarding Harper PTD benefits under the Act.  Specifically, Springfield Rehab contends the commission erred in determining that the pull Harper suffered, in isolation, resulted in an injury rendering Harper permanently and totally disabled because she continued to work for several months after her workplace injury and, therefore, fails to meet the statutory requirements of total disability as defined under the Act.

"The term **'total disability'** as used in [the Act] shall mean inability to return to any employment and not merely inability to return to the employment in which the employee

9

was engaged at the time of the accident." Section 287.020.6. "The test for permanent total disability is the worker's ability to compete in the open labor market because it measures the worker's potential for returning to employment." *Greer*, 475 S.W.3d at 664 (internal quotation omitted).

This Court rejected a similar argument to Springfield Rehab's in *Big Boy*, 121 S.W.3d 220. In that case, the employer argued the commission's award of PTD benefits was not supported by competent and substantial evidence because of the nature of the claimant's injury, the claimant's complaints did not establish the unavailability of jobs in the open labor market, and the evidence did not establish the claimant was totally disabled due to the workplace injury. *Id.* at 223. The Court, however, noted the commission had found credible the claimant's testimony that he needed to lie down or recline for several hours during the day as a result of his disability, a limitation that would prevent full-time employment. *Id.* at 223-24. The Court also noted the commission found credible expert testimony that the claimant's impairment left him unable to compete in the open labor market given his limitations, advanced age, and lack of transferable skills. *Id.* at 224. Finally, the Court found the record established the claimant's severe impairment and the impairment arose from the workplace accident. *Id.*

Similar to the claimant in *Big Boy*, Harper testified she has severe, ongoing pain requiring her to lie down throughout the day. *See id.* at 223-24. Medical evidence of Harper's condition included Dr. Carampatan's diagnosis, the imaging, and Dr. Koprivica's evaluation. Dr. Koprivica, moreover, opined Harper's severe disability renders her totally disabled given her limitations and need to lie down unpredictably. Eldred's testimony

10

concurred that Harper is functioning at less than sedentary level and unemployable on the open labor market given her advanced age and limitations. *See id.* (finding the claimant's testimony of his need to lie down during the day due to severe impairment and expert testimony of total disability given the claimant's age and limitations constituted competent and substantial evidence of PTD).[6]

Springfield Rehab contends Harper cannot be totally disabled from her workplace injury alone because she remained employed at Springfield Rehab for several months after her work injury. This argument fails to note Harper clearly struggled with significant pain rendering her unable to complete her duties or even make it to work during much of that time. Following the workplace accident, the muscle strain she experienced did not dissipate but rather increased into significant, debilitating pain to the point she reported her injury, sought medical care, and terminated her employment. Harper's efforts to continue working through debilitating pain do not equate to future employability.[7] The testimony

---

[6] In *Big Boy*, 121 S.W.3d at 221, 223-24, the evidence found sufficient included testimony from the claimant and a vocational expert. Similarly, the evidence of Harper's PTD includes testimony from Harper and a vocational expert, as well as expert testimony from a medical doctor.

[7] Springfield Rehab also contends Harper remained employed after the date the commission found she reached maximum medical improvement. "[T]he [c]ommission and appellate courts have relied upon the date of maximum medical improvement to determinate when a condition becomes permanent[.]" *Greer*, 475 S.W.3d at 667; *see* section 287.020.12, RSMo Supp. 2018 (defining "maximum medical improvement" as "the point at which the injured employee's medical condition has stabilized and can no longer reasonably improve with additional medical care, as determined within a reasonable degree of medical certainty"). As discussed, Harper's attempts to work and remain employed after she reached maximum medical improvement do not require a finding that she was employable.

of Harper, Dr. Koprivica, and Eldred, all of which the commission found credible, constitutes competent and substantial evidence of PTD resulting from the workplace accident. *See id.* (holding the claimant and expert testimony found credible by the commission was competent and substantial evidence of total disability arising from a workplace accident); *see also Greer*, 475 S.W.3d at 665s ("Employability is a matter within the [c]ommission's expertise[.]" (internal quotation omitted)). Point four is denied.[8]

**The record contains competent and substantial evidence of a reasonable probability Harper will need future medical care due to her workplace injury**

Finally, in its sixth point relied on, Springfield Rehab contends the record does not contain competent and substantial evidence of a reasonable probability Harper will need future medical treatment due to her work-related injury. The Act provides:

> In addition to all other compensation paid to the employee under this section, the employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment, including nursing, custodial, ambulance and medicines, as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury.

---

[8] In numerous places in its brief, Springfield Rehab appears to suggest Harper is not permanently and totally disabled due entirely from her workplace injury given she had preexisting medical problems. To the extent Springfield Rehab's point relied on and brief can be so interpreted, competent and substantial evidence presented to the ALJ and adopted by the commission supports the opposite conclusion. *See Greer*, 475 S.W.3d at 664 ("This Court must defer to the [c]ommission's findings on … the weight given to conflicting evidence[.]").

Dr. Koprivica opined Harper's total disability is from her workplace injury alone. This conclusion is supported by Harper's account. Harper had successfully returned to the workforce for several years after her previous injuries and medical problems and prior to the workplace accident. Following the accident, the initial pull she experienced developed into debilitating pain to the point she terminated her employment. Harper's position has been consistent as to the cart accident being the catalyst of her debilitating pain rendering her unable to work. *See Big Boy*, 121 S.W.3d at 223-24 (finding the claimant's total disability arose from a workplace accident rendereding the claimant unable to perform basic physical activity due to back impairment).

12

Section 287.140.1.

Pursuant to section 287.140.1, the commission in this case awarded Harper "future medical treatment to cure and relieve the effects of the work injury of June 22, 2018." Springfield Rehab contends this award of future medical care was erroneous because Harper cannot demonstrate a "reasonable probability" that future medical treatment will be necessary due to the work-related injury.

Springfield Rehab's argument fails because a claimant "needs only to show a reasonable probability that the future treatment is necessary because of [her] work-related injury." *Greer*, 475 S.W.3d at 673. The facts of this case clearly show a reasonable probability Harper will need future medical treatment due to her workplace injury. The record established she has suffered persistent, debilitating pain for which she has sought medical care since the cart accident. There is no reason from the record to assume her pain will suddenly subside or she will never again need medical care to address her condition. Rather, Dr. Koprivica opined, "I thought that she needed ongoing multidisciplinary pain management …. I still think she needs monitoring and medication and possible psychological support."[9] The record contains competent and substantial evidence there is a reasonable probability Harper has continued to need and will continue to need future medical treatment due to her workplace injury. Point six is denied.

_____

[9] Springfield Rehab appears to suggest the commission's award of future medical treatment is improperly based on a non-pled and non-work-related psychological component. The commission's final award, however, provides for "future medical treatment to cure and relieve *the effects of the work injury of June 22, 2018*." (Emphasis added).

## Conclusion

Because competent and substantial evidence supports the commission's final award of PTD compensation and future medical care, this Court affirms.

_____
W. Brent Powell, Judge

Russell, C.J., Ransom and Wilson, JJ., concur;
Fischer, J., concurs in separate opinion filed.
Broniec and Gooch, JJ., not participating.

14



# SUPREME COURT OF MISSOURI
## en banc

JEANNIE E. HARPER, )
)
    Respondent, )
)
v. )
)
SPRINGFIELD REHAB AND HEALTH )
CARE CENTER/NHC HEALTH, )
)
    Appellant, )
)
PREMIER GROUP INSURANCE )     No. SC100006
COMPANY CORVEL ENTERPRISE )
COMPANY, INC. (TPA), )
)
    Appellant, )
)
and )
)
TREASURER OF MISSOURI AS )
CUSTODIAN OF THE SECOND INJURY )
FUND, )
)
    Respondent. )

## CONCURRING OPINION

I concur with the conclusion of the principal opinion and its holding that Springfield

Rehab's points relied on all fail to comply with Rule 84.04.  Because the Rule 84.04 briefing

requirements are mandatory, however, I would dismiss Springfield Rehab's appeal for its repeated, wholesale noncompliance with Rule 84.04.[1]

Rule 84.04's briefing rules are mandatory. *Lexow v. Boeing Co.*, 643 S.W.3d 501, 505 (Mo. banc 2022). A noncompliant point relied on fails to preserve a claim for appellate review. *Fowler v. Mo. Sheriffs' Ret. Sys.*, 623 S.W.3d 578, 583 (Mo. banc 2021). Fortunately, Rule 84.04 provides simple, straightforward guidance for drafting a compliant point relied on in appeals from circuit court judgments, administrative agency decisions, and original writ proceedings. Rule 84.04(d)(1)-(3).

In this case, Rule 84.04(d)(2) identifies the elements of a point relied on in an appeal from an agency decision and provides the template for a compliant point, literally leaving it to the appellant to fill in the blanks:

> Where the appellate court reviews the decision of an administrative agency, rather than a trial court, each point shall:
>
> (A) Identify the administrative ruling or action the appellant challenges;
> (B) State concisely the legal reasons for the appellant's claim of reversible error; and

---

[1] Consistent with the mandatory nature of the rules, "this Court should employ *ex gratia* review only when the issue contained in the point relied on is exceedingly important." *Lollar v. Lollar*, 609 S.W.3d 41, 50 (Mo. banc 2020) (Fischer, J., concurring). For instance, as I noted in *Lollar*, this Court in *Macke v. Patton*, 591 S.W.3d 865, 870 n.3 (Mo. banc 2019), exercised its discretion to review a noncompliant point relied on to correct a line of court of appeals decisions utilizing an incorrect standard of review for wrongful death settlement apportionment determinations. Similarly, in *Johnson v. State*, 580 S.W.3d 895, 907 n.10 (Mo. banc 2019), this Court recognized it should "exercise extreme caution when deciding whether to conduct discretionary *ex gratia* review, as such review is warranted only where necessary to avoid manifest injustice." This case does not involve an exceedingly important legal issue in need of immediate resolution. There is no manifest injustice because, whether the appeal is dismissed or resolved on the merits, the net result is the same: the Commission's award stands. Under the circumstances, noncompliance with the mandatory briefing rules should preclude gratuitous review of the deficient points relied on.

(C) Explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

The point shall be in substantially the following form: "The [*name of agency*] erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error, including the reference to the applicable statute authorizing review*], in that [*explain why, in the context of the case, the legal reasons support the claim of reversible error*]."

The principal opinion correctly holds all six points relied on violate Rule 84.04(d)(2). The principal opinion dismisses Springfield Rehab's second and fifth points relied on but then gratuitously reviews the remaining points to the extent they can be discerned and interpreted. My concern is, and always has been, that the moment this Court attempts to discern or interpret a noncompliant point relied on, it risks blurring the clear line Rule 84.04 draws between neutrality and well-intentioned, but ill-advised, advocacy. *Bowers v. Bowers*, 543 S.W.3d 608, 619 (Mo. banc 2018) (Fischer, J., concurring). In my view, whenever this Court must discern and interpret the points relied on, the most judicious course of action is to dismiss the appeal.

The reasons for dismissal are well-established and essential. When resolving an appeal, this Court serves as a neutral arbiter of legal disputes, not as an "advocate for any party to an appeal." *Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978). Reviewing a deficient point gratuitously "creates a risk of the Court exceeding its jurisprudential function and assuming a role as advocate instead of arbiter." *Johnson*, 580 S.W.3d at 907 n.10. It follows that this Court "should exercise extreme caution" and should gratuitously review a deficient point only when necessary to avoid a "manifest injustice" or to address an "exceedingly important" issue in need of immediate resolution. *Lollar*, 609 S.W.3d at

3

50 (Fischer, J., concurring). Declining to review Springfield Rehab's deficient points relied on challenging an administrative award of permanent total disability benefits would not result in a manifest injustice. It would, however, send a clear and important message that this Court will enforce its own rules as written to preserve both its neutrality and the level playing field the rules create.

Finally, any remaining sliver of a reason to gratuitously review the deficient points relied on is severed by fact the court of appeals dismissed all but one of Springfield Rehab's points relied due to noncompliance with Rule 84.04. Dismissal is especially appropriate when, as in this case, a party is "warned by the court of appeals of the briefing deficiencies" and fails "to adequately rectify the shortcomings identified by the court of appeals" in its substitute briefing. *Lexow*, 643 S.W.3d at 509. Despite the fact the court of appeals dismissed all but subpart (B) of its multifarious first point relied on, Springfield Rehab's substitute brief also fails to comply with the clear dictates of Rule 84.04(d)(2). I would dismiss the appeal.

_____
Zel M. Fischer, Judge