George W. Draper III, Judge
Jessica Bowers (hereinafter, "Jessica")[1] appeals the circuit court's judgment dissolving her marriage to Jason Bowers (hereinafter, "Jason") in which the circuit court designated Jason a third party in the dissolution proceeding for purposes of determining custody of J.B. (hereinafter, "Child"). The circuit court awarded Jason sole legal and physical custody of Child after finding it would not be in Child's best interest for Jessica or Child's biological father, Stephen Nugent (hereinafter, "Stephen"), to have sole physical or legal custody because they were unfit custodians. Jessica raises two points on appeal, challenging the circuit court's designation of Jason as a third party in their dissolution action and its custody award. The circuit court's judgment is affirmed.[2]
Factual and Procedural History
In 2007, Jessica and Stephen were involved in a romantic relationship. Jessica became pregnant, she informed Stephen of the pregnancy, and they ended their relationship. Jessica subsequently began a romantic relationship with Jason. Jessica informed Jason she was pregnant with Stephen's child. Jason and Jessica began cohabitating, decided to get married, and agreed to have Jason raise Child as his own. Jessica and Jason jointly informed Stephen of their decision and asked Stephen to not become involved in Child's life. Stephen acquiesced in this request and voluntarily permitted Jason to act as Child's father.
Child was born in April 2008. Four days after Child's birth, Jessica and Jason executed a Missouri Affidavit Acknowledging Paternity (hereinafter, "paternity affidavit"). The parties' execution of the paternity affidavit resulted in the state issuing a birth certificate naming Jason as Child's father.[3] Jessica and Jason wed in April 2010 and continued to reside as a family until the parties separated in August 2012.
In May 2013, Jason filed a petition for dissolution, alleging Child was born of the marriage, indicating he executed the paternity affidavit, and noting his name appeared on Child's birth certificate. Jason requested an award of joint legal and physical custody and child support. Jessica filed an answer and cross-petition for dissolution. In her initial pleading, Jessica *611 denied Child was born of the marriage and alleged Jason had no custody rights to Child. Jessica alleged Jason was not Child's biological father "due to a material mistake in fact or fraud" when executing the paternity affidavit because another individual was Child's biological father. Jessica requested a declaration of non-paternity, sought DNA testing, and appointment of a guardian ad litem for Child.
Jason denied all of Jessica's allegations in his answer to her cross-petition and filed a motion to dismiss Jessica's claim of mistake or fraud in executing the paternity affidavit for failure to state a claim. The circuit court appointed a guardian ad litem and ordered therapy for Child. The circuit court also ordered Jessica to respond to Jason's motion to dismiss, indicating it would treat the issue as one for summary judgment.
In September 2013, Jessica filed an amended answer and cross-petition for dissolution in lieu of responding to Jason's motion to dismiss and complying with the circuit court's order. Jessica again denied Child was born of the marriage but admitted Jason was Child's "legal" father because of the paternity affidavit. Jessica requested sole physical and legal custody of Child. Jason also requested sole physical and legal custody. Jason later filed motions for temporary custody of Child due to Jessica's attempts to alienate him from Child and withholding certain periods of visitation.
In December 2013, Jessica introduced Stephen to Child for the first time and told Child he was her biological father. In January 2014, Stephen filed a "Motion to Intervene, Third-Party Respondent's Petition for Determination of Father-Child Relationship and Judgment and Order of Custody" in Jessica and Jason's dissolution action. In his motion, Stephen acknowledged Jason was named as Child's father on her birth certificate; however, Stephen alleged he was Child's natural father. Stephen sought intervention to assert his rights of parentage to Child pursuant to the Missouri Uniform Parentage Act (hereinafter, "UPA"), sought joint physical and legal custody of Child to be shared with Jessica, and requested Child's birth certificate be amended to name him Child's biological father. The circuit court sustained Stephen's motion to intervene in the dissolution action over Jason's objections. The circuit court also ordered Stephen to have no contact with Child, ordered Jessica to not discuss with Child any issue related to the litigation, including, but not limited to, parentage, and admonished all of the parties not to discuss any aspect of the litigation with Child. The circuit court further ordered Jessica not to have her current boyfriend accompany her during custody exchanges with Jason.
Although the circuit court did not grant any party's request for DNA testing, Jessica and Stephen pursued their own testing, which confirmed Stephen was Child's biological father. Jessica subsequently filed a motion to dismiss Jason's claims for custody and child support, arguing the circuit court had no authority to determine custody in their dissolution proceeding when Child was not born of the marriage or adopted by Jason. Jessica also rescinded her allegation Jason was Child's "legal" father.
In his response to Jessica's motion to dismiss, Jason alleged she was barred statutorily from rescinding the paternity affidavit. Alternatively, Jason filed a motion for third party custody pursuant to section 452.375.5, RSMo 2000,[4] in the event Jessica's motion to dismiss was sustained. Jason *612 continued to maintain he was Child's father due to the paternity affidavit and the birth certificate. Jason further averred Jessica and Stephen were unfit and unsuitable to have sole legal and physical custody and it was in Child's best interest he be awarded third-party custody. Jessica and Stephen both filed motions to dismiss Jason's third-party custody claim.
The circuit court held a bench trial on the respective petitions and motions filed by Jessica, Jason, and Stephen regarding dissolution, paternity, custody, and visitation. All of the interested parties were present and testified, along with Child's therapist and guardian ad litem.
The circuit court entered a detailed judgment, assessing credibility and disposing of all of the issues. The circuit court recognized if this case were solely a dissolution proceeding, it would lack the authority to determine child custody because Child was not born of the marriage or adopted by Jason. However, because all interested parties were present, the primary issue to be decided was custody and because the biological parents requested a custody determination in this proceeding, the circuit court concluded, "In the interest of judicial efficiency this [c]ourt should determine custody" within the dissolution proceeding. The circuit court held Jason was to be treated as a third party pursuant to section 452.375.5.
The circuit court found Child's therapist and Jason were credible witnesses. The circuit court found Jessica and Stephen credible only to the extent they admitted they repeatedly violated court orders during the litigation.[5] The circuit court determined Jessica's testimony, actions, and pleadings, along with testimony from Child's therapist, supported a conclusion Jessica was unlikely to allow Child continuing and meaningful contact with Jason without a court order. The circuit court found Jessica and Jason could not co-parent, rendering an award of joint custody not possible. The circuit court held Stephen and Jessica were both unfit, unsuitable, and unable to be Child's custodian. The circuit court further held it was not in Child's best interest for Jessica or Stephen to have physical or legal custody of Child. The circuit court awarded Jason third-party custody, finding that arrangement was in Child's best interest. The circuit court ordered Child's birth certificate be amended to name Stephen as Child's biological father.
Jessica filed a motion for new trial or to amend the judgment, alleging the circuit court erred in allowing Jason to proceed as both a party and a third party in the same proceeding. Jessica also averred the circuit court failed to set forth the relevant factors under section 452.375.2(1)-(8) in making its custody determination, and the custody determination was against the weight of the evidence. The circuit court overruled Jessica's motion but issued an addendum to the judgment in which it explained which section 452.375.2 factors it applied in reaching its custody determination.
Jessica timely appealed. The Eastern District affirmed the circuit court's judgment. Judge Lisa Page dissented and certified this case for transfer to this Court. See Rule 83.03.
*613 Standard of Review
This Court must affirm the circuit court's judgment "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." Brown v. Brown , 423 S.W.3d 784, 787 (Mo. banc 2014) ; Murphy v. Carron , 536 S.W.2d 30, 32 (Mo. banc 1976). This Court reviews conflicting evidence in the light most favorable to the circuit court's judgment. J.A.R. v. D.G.R. , 426 S.W.3d 624, 626 (Mo. banc 2014). This Court defers to the circuit court's credibility determinations, and when the evidence poses two reasonable but different inferences, this Court must defer to the circuit court's assessment of the evidence. Id.
Third-Party Designation
Jessica alleges the circuit court erred in designating Jason as a third party in their dissolution proceeding and awarding him third-party custody because such an award violates section 452.375.5(5). Jessica maintains the legislature did not intend for a third party under section 452.375.5(5) to include a party to a dissolution proceeding. Jason's designation as a third party is a legal question this Court reviews de novo. Pearson v. Koster , 367 S.W.3d 36, 43 (Mo. banc 2012).
The legal quagmire this case presents gives this Court an opportunity to reiterate the appropriate procedure to adjudicate paternity actions when a related dissolution proceeding is pending. Supreme Court Operating Rule 4.05.3 expressly provides, "Dissolutions and paternity actions shall be filed separately. A separate case number shall be assigned for each dissolution and each paternity action filed and shall be related in the automated case management system for scheduling and other processing." Operating Rule 4.05.3's plain and unambiguous language instructs circuit courts to sever contested paternity actions from dissolution proceedings so the proceedings are assigned different case numbers. Had the parties and the circuit court followed Operating Rule 4.05.3, the need for Jason to seek third-party custody as an alternative claim in his own dissolution proceeding could have been avoided.[6]
Jessica argues because Jason already was a party to the dissolution, he also could not be designated as a third party for purposes of custody. Section 452.375.5(5) states, "Prior to awarding the appropriate custody arrangement in the best interest of the child, the court shall consider each of the following as follows ... [t]hird-party custody or visitation." This subsection further provides, "Before the court awards custody, temporary custody or visitation to a third person under this subdivision, the court shall make that person a party to the action."
*614 Jessica relies on In re Marriage of Said , 26 S.W.3d 839 (Mo. App. S.D. 2000), to support her position that Jason could not be "added" as a third party to the dissolution proceeding. In Said , two children were born of the marriage but were later determined not to be the husband's biological children. During the parties' dissolution action, the husband sought custody of the children. The circuit court permitted the husband to intervene pursuant to section 452.375.5(5) but ultimately dismissed his claim for custody. Said , 26 S.W.3d at 841-43. On appeal, the husband argued the circuit court erred in dismissing his custody claim because "a step[ ]parent, is a third person entitled to bring a cause of action for custody under section 452.375.5(5) ... and his pleadings were sufficient to state a cause of action." Id. at 843. The Southern District rejected the husband's argument, stating:
The second sentence of § 452.375.5(5)(a) specifically provides that before a court awards custody, temporary custody or visitation to a third person, the court shall make that person a party to the action. Because a husband and wife are always parties to an action to dissolve their marriage, the statutory requirement that the court make the third person a party to the action indicates the General Assembly did not intend that the term 'third person' include a husband or wife in a dissolution action.
Id. at 844. The Southern District found the husband's petition failed to allege the children's biological father was unfit, unsuitable, or unable to be a custodian, hence, he failed to state a cause of action. Id.[7] The Southern District limited its holding to the "extraordinary facts" of the case. Id. at 845.
Said is distinguishable from the instant case in many respects. First, the children were born of the marriage while Child was not. Second, the husband's third-party custody claim was premised on his status as a stepparent, hence mimicking an equitable parentage claim, which this Court rejected in Cotton v. Wise , 977 S.W.2d 263, 265 (Mo. banc 1998). Jason does not raise any equitable parenting claims or assert his position as Child's stepparent as a ground for custody. Third, the husband's petition failed to state a cause of action under section 452.375.5(5) because he failed to allege the biological father was an unfit custodian. By contrast, Jason pleaded a proper cause of action for third-party custody in that he alleged Jessica and Stephen were unfit and unsuitable to be Child's custodians, and Child's welfare and her best interest required he be awarded third-party custody. In re T.Q.L. , 386 S.W.3d 135, 140 (Mo. banc 2012).
The record also reveals Jessica actively sought out Stephen after Jason filed for dissolution, encouraged Stephen to assert his paternity rights, and assisted Stephen in securing an attorney to file his custody claim.[8] Jessica likewise raised no objection and failed to cite Operating Rule 4.05.3 in response to Stephen's motion to intervene in the dissolution proceeding to adjudicate Child's paternity and custody. Consequently, to the extent Jessica's argument could be construed as one challenging the procedural posture, this Court is disinclined to grant Jessica relief based on *615 error she actively invited. "A party cannot complain on appeal about an alleged error in which that party joined or acquiesced at trial." Sutton v. McCollum , 421 S.W.3d 477, 481 (Mo. App. S.D. 2013) (quoting In re Marriage of Angell , 328 S.W.3d 753, 762 (Mo. App. S.D. 2010) ). While not endorsing the parties' procedural maneuvering under these unique facts, this Court finds the circuit court did not err in designating Jason a third-party solely for the purpose of determining custody.
Child Custody Award
Jessica next raises a multitude of arguments[9] attacking the circuit court's judgment finding her to be an unfit or unsuitable custodian and awarding Jason custody of Child as against the weight of the evidence. This Court recently explained the standard of review appellate courts apply when reviewing a claim the circuit court's judgment is against the weight of the evidence:
Appellate courts act with caution in exercising the power to set aside a decree or judgment on the ground that it is against the weight of the evidence. [A] claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment. The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong. When reviewing the record in an against-the-weight-of-the-evidence challenge, this Court defers to the circuit court's findings of fact when the factual issues are contested and when the facts as found by the circuit court depend on credibility determinations. A circuit court's judgment is against the weight of the evidence only if the circuit court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment. When the evidence poses two reasonable but different inferences, this Court is obligated to defer to the trial court's assessment of the evidence. This Court rarely has reversed a trial judgment as against the weight of the evidence....
S.S.S. v. C.V.S. , 529 S.W.3d 811, 815-16 (Mo. banc 2017) (internal citations and quotations omitted).
Jessica asserts that, as Child's biological parent, she has a superior right to custody. Accordingly, Jessica believes the circuit court erred in failing to award her sole legal and physical custody because its finding she was unfit was against the weight of the evidence and not supported with substantial evidence when it found she: (1) disregarded Child's medical needs; (2) withheld visitation on a number of occasions; (3) required a specific court order to allow Jason frequent and meaningful contact with Child; (4) intended to remove Child from her current school; (5) diminished or excluded Jason's role in Child's life; (6) consistently placed her interests ahead of Child's such that it called into question whether she was willing to perform her function as a mother; and (7) was incapable of co-parenting with Jason.
The law contains a parental presumption that the best interest of a child is *616 best served by vesting custody of the child with his or her biological parent. White v. White , 293 S.W.3d 1, 17 (Mo. App. W.D. 2009). However, this parental presumption can be rebutted under section 452.375.5, which provides, "Prior to awarding the appropriate custody arrangement in the best interest of the child, the court shall consider ... [t]hird-party custody or visitation." A circuit court may award third-party custody or visitation
[w]hen the court finds that each parent is unfit, unsuitable, or unable to be a custodian, or the welfare of the child requires, and it is in the best interests of the child, then custody, temporary custody or visitation may be awarded to any other person or persons deemed by the court to be suitable and able to provide an adequate and stable environment for the child.
Section 452.375.5(5)(a). "The language and context of section 452.375.5 shows that the legislature intended third-party custody or visitation referenced in subparagraph (5)(a) as an alternative consideration to parental custody." Hanson v. Carroll , 527 S.W.3d 849, 854 (Mo. banc 2017). This section provides a basis for nonbiological parents to bring an action seeking child custody and visitation. McGaw v. McGaw , 468 S.W.3d 435, 444 (Mo. App. W.D. 2015). As stated previously, Jason pleaded a proper cause of action under section 452.375.5(5)(a) regarding custody of Child.
Permitting a person to seek custody of a child to whom he or she is not biologically related does not run afoul of the holding in Troxel v. Granville , 530 U.S. 57, 67, 120 S.Ct. 2054, 147 L.Ed. 2d 49 (2000). Troxel held a "breathtakingly broad" visitation "statute violated a biological mother's substantive due process right to make child-rearing decisions without undue governmental interference." Troxel , 530 U.S. at 60, 120 S.Ct. 2054 ; McGaw , 468 S.W.3d at 446. McGaw explained section 452.375.5(5) did "not authorize third-party custody or visitation merely because a court determines that it would be in a child's best interests." Id. at 446-47. Instead, unlike the statute in Troxel ,
The Missouri statute carries a rebuttable presumption that custody should be with the parent. We presume parental custody is in a minor child's best interests. To rebut this presumption, the third party seeking custody must carry the burden of showing either that each parent is unfit, unsuitable, or unable to have custody or that the welfare of the child requires third party custody.
Id. at 447 (quoting Young v. Young , 59 S.W.3d 23, 28 (Mo. App. W.D. 2001) (internal quotations omitted)).
Moreover, Jason "is not simply 'any third party that comes along.' " Id. Jason's third-party claim "is being asserted by an individual who was specifically invited by a biological parent to act as a parent of the [child] at issue, and in fact acted in that capacity for an extended period of time." McGaw , 468 S.W.3d at 447-48 ; see also T.Q.L. , 386 S.W.3d at 137 (finding a mother's paramour raised a son as his own for four years at the mother's invitation); In re D.S.K. , 428 S.W.3d 655, 656 (Mo. App. W.D. 2013) (finding a husband raised all of the children born during the marriage when the mother knew they were not husband's biological children).
The circuit court had before it all of the interested parties and a multitude of pleadings, and it held an extensive trial. The circuit court issued a judgment, and an addendum to the judgment at Jessica's request, setting forth the relevant factors it considered in awarding Jason third-party custody of Child. This Court declines Jessica's invitation to contravene the standard of review in an "against the weight of the evidence" challenge and reweigh the *617 evidence, disregard the circuit court's credibility determinations, and reach different, even if reasonable, inferences, from the evidence presented. Jessica has not presented any evidence demonstrating the circuit court's judgment is erroneous. The circuit court properly found Jason rebutted the parental presumption in Jessica's favor when it determined she was unfit or unsuitable to have sole legal and physical custody of Child.
Jessica further claims the circuit court erred in failing to find Child's welfare required an award of third-party custody. This contention lacks merit. Section 452.375.5(a) plainly requires a third party to allege "each parent is unfit, unsuitable, or unable to be a custodian, or the welfare of the child requires, and it is in the best interests of the child." (Emphasis added). Although Jason pleaded unfitness, welfare, and best interest, the circuit court was only required to find unfitness or welfare, and best interest to award him third-party custody.
Although the circuit court was not required to find Child's welfare required an award of third-party custody in light of Jason's unfitness allegations, there are cases holding a "significant bonding familial custody relationship with third parties can constitute a special or extraordinary reason or circumstance rendering it in a child's best interest to award third-party custody" when analyzing the welfare-of-the-child prong under section 452.375.5. C.L. v. M.T. , 335 S.W.3d 19, 30 (Mo. App. W.D. 2011) (quoting Flathers v. Flathers , 948 S.W.2d 463, 470 (Mo. App. W.D. 1997) ). The record contains substantial, credible testimony from Child's therapist who testified Child is attached and bonded deeply to Jason and considers him her primary parent. Child's therapist described Jason's relationship with Child as more "parental" and "one that one would want to see between a dad and child, gentle, thoughtful, considerate, [and] loving." Child's therapist testified breaking the bond between Child and Jason by severing their relationship would be "psychologically destructive" to Child's emotional development and path to maturity. Child's therapist described the conflict and "psychological chaos" Child experienced by having to process the divorce, losing Jason as the only father she has known, being introduced to Stephen as her "real" father, and having to consider Jessica's current boyfriend as a future stepfather.
Jason also testified credibly about Jessica's attempts to diminish and eliminate his role in Child's life despite having knowledge of the therapist's recommendation it would be "psychologically destructive" to Child. The circuit court recognized this significant bond in its judgment and found Jessica took express action to break that bond repeatedly and would continue to attempt to do so, even with a court order directing her to the contrary. The circuit court's award of third-party custody to Jason was not against the weight of the evidence.
Conclusion
The circuit court's judgment is affirmed.
Wilson, Russell, Powell, Breckenridge and Stith, JJ., concur;
Fischer, C.J., concurs in separate opinion filed.

This Court refers to the parties by their first names for ease of clarity and intends no familiarity or disrespect.

After opinion by the court of appeals and a dissenting opinion, which certified the majority opinion was contrary to a previous decision of this Court, this case was transferred to this Court pursuant to Rule 83.03. This Court has jurisdiction. Mo. Const. art. V, sec. 10.

This Court is cognizant, as were the lower courts, that the parties knew, at the time the paternity affidavit was executed, Stephen was Child's biological father.

All statutory references are to RSMo 2000, as supplemented.

Jason filed several contempt motions against Jessica, alleging she violated the circuit court's orders prohibiting her from having her current boyfriend accompany her during custody exchanges, allowing Stephen to have contact with Child, and failing to cooperate with filing her income tax return with Jason. At a contempt hearing held after the custody trial, Jessica admitted she violated the circuit court's order regarding the custody exchanges, and two other orders. The circuit court held Jessica in contempt, and she does not contest that ruling on appeal.

This Court is cognizant that section 210.829.1 states an action brought under the UPA "may be joined by separate document with an action for dissolution of marriage, annulment, separate maintenance, support, custody or visitation." See also DeWitt v. Lechuga , 393 S.W.3d 113, 117 (Mo. App. W.D. 2013). Hence, section 210.829.1 and Operating Rule 4.05.3 appear to conflict on this procedural point. "Supreme Court rules govern over contradictory statutes in procedural matters unless the General Assembly specifically annuls or amends the rules in a bill limited to that purpose." State ex rel. Collector of Winchester v. Jamison , 357 S.W.3d 589, 597 (Mo. banc 2012) (quoting Ostermueller v. Potter , 868 S.W.2d 110, 111 (Mo. banc 1993) ). While there is a potential for this rule to conflict with section 210.829.1, this issue was not raised or addressed by the parties. Further, there is no need to resolve this potential issue because it does not impact the resolution of this case.

See also Warlop v. Warlop , 254 S.W.3d 262, 264 n.2 (Mo. App. W.D. 2008) (relying on Said and noting the husband's failure to make any allegations of unfitness against the child's biological father did not meet the prerequisites of section 452.375.5(5)(a)).

Notably, Stephen's stated desire at trial to become Child's custodian is belied by the fact he did not file an appeal presenting any challenge to the circuit court's procedure, the finding he is an unfit custodian, or the denial of his custody claim.

Jessica's point on appeal is clearly multifarious, containing more than one basis for reversal. Multifarious points relied on are noncompliant with Rule 84.04(d) and preserve nothing for review. Kirk v. State , 520 S.W.3d 443, 450 n.3 (Mo. banc 2017). "Nevertheless, this Court gratuitously exercises its discretion to review the defective point and resolve the issues on the merits." Peters v. Johns , 489 S.W.3d 262, 268 n.8 (Mo. banc 2016).