SHERRI B. SULLIVAN, P.J.
Introduction
Kyle Conoyer (Appellant) appeals from the motion court's order and judgment granting Rachel Kuhl's (Respondent) motion to dismiss Appellant's Amended Petition for Third Party Custody. We reverse and remand.
Factual and Procedural Background
Appellant and Respondent were in a romantic relationship in high school. They broke off their relationship sometime around January, 2011. Shortly thereafter, Respondent became pregnant as a result of a non-consensual sexual encounter with another man. Afterwards, while Respondent was pregnant, she and Appellant resumed their relationship. Respondent told Appellant of the pregnancy; the child, E.K., was born April 11, 2012.
Appellant and Respondent continued their relationship for the next several years. Appellant and Respondent lived together, and Appellant helped care for E.K. Appellant viewed his relationship with Respondent and E.K. as that of a family, and he views E.K. as his daughter, if not in biological fact. Appellant and Respondent were never married.
The couple separated sometime around 2016 or 2017. Since their separation, Respondent has not allowed Appellant any contact with E.K.
*396 On July 25, 2017, Appellant filed a petition with the St. Charles County Circuit Court for third-party custody, pursuant to Section 452.375.5.[1] With the court's leave, Appellant filed an Amended Petition for Third Party Custody (Amended Petition) on November 11, 2017, which set out the facts of his relationship with Respondent and E.K. in further detail. Among the facts alleged were:
- Appellant assumed the role of a father to E.K., and E.K. referred to Appellant as "Dad" and to Appellant's parents as "Grandma" and "Grandpa."
- Friends and acquaintances of Appellant and Respondent believed Appellant to be E.K.'s father.
- Respondent referred to E.K. as "your baby" during her pregnancy.
- Appellant was present during E.K.'s birth, cut the umbilical cord, and held her after the delivery.
- Appellant and Respondent chose E.K.'s name together.
- Appellant and Respondent purchased a house. The house was in Respondent's name, but Appellant provided the down payment and made mortgage payments.
- Appellant provided for E.K. financially and cared for her when Respondent was at work.
- Appellant, Respondent, and E.K. lived the life of a typical family, spending time during the week and on weekends doing family activities such as game nights, trips, and birthday parties.
- Appellant, Respondent, and E.K. slept in the same bed together.
- Appellant, Respondent, and E.K. spent holidays with each other's respective families.
- Appellant and Respondent were at one point engaged and planning a wedding.
- During this period, Respondent invited and encouraged Appellant to take an active parental role with E.K.
- Since their separation, E.K. had become emotionally distraught due to her lack of contact with Appellant, whom she viewed as her father.
- E.K.'s biological father had played no role whatsoever in her life, and is an unsuitable, unwilling custodian of E.K.
- Respondent had herself proven to be an unfit custodian by refusing to allow contact between Appellant and E.K.
- Appellant is a suitable custodian, and able and willing to provide an adequate and stable environment for E.K.
- Finally, Appellant alleges these circumstances constitute special or extraordinary circumstances rendering it in E.K.'s best interests to continue to have contact with Appellant, and to grant custody rights to Appellant.
Appellant attached one exhibit, a copy of a text message allegedly received from Respondent, to his Amended Petition.
On the same day he filed his Amended Petition, Appellant also filed a motion to appoint a guardian ad litem to investigate whether the welfare of E.K. required he be granted third-party custody rights.
On December 4, 2017, Respondent filed a motion to dismiss Appellant's Amended Petition. Respondent argued even if all the facts alleged in Appellant's Amended Petition were true, the Amended Petition failed to state a claim upon which the relief sought could be granted. On that same day, Respondent also filed a motion asking for a hearing on her motion to dismiss and requested the court defer ruling on Appellant's *397 motion to appoint a guardian ad litem until after such hearing was held, as a ruling in favor of Respondent would obviate the need for a guardian ad litem's appointment. The motion court granted both requests, and the motion to dismiss Appellant's Amended Petition was set for hearing.
The hearing was held on January 19, 2018. At the hearing, no argument was presented from Appellant or Respondent regarding the merits of Respondent's motion to dismiss the Amended Petition. Rather, the parties themselves testified before the motion court about the many factual disputes in the underlying claim. Respondent testified, in so many words, that the facts averred in the Amended Petition were inaccurate and mischaracterized the relationship between Appellant, E.K., and herself. Both parties submitted several exhibits to the motion court, including a number of affidavits submitted by Respondent from E.K.'s teachers and physician, and several photographs, a Father's Day card, and a text message submitted by Appellant.
After hearing evidence from the parties, the motion court took the matter under submission. On January 24, 2018, the motion court entered a one-sentence judgment granting Respondent's motion to dismiss Appellant's Amended Petition. This appeal follows.
Points Relied On
Appellant asserts two points on appeal. In his first point, Appellant claims the trial court erred in granting the motion to dismiss the Amended Petition because the facts alleged in the petition were sufficient to state a claim for third-party custody under Section 452.375.5. Appellant's second point claims the motion court misapplied Section 452.375.5 when it failed to enter judgment in favor of Appellant. Because resolution of Appellant's first point is dispositive of this appeal, we do not reach Appellant's second point.
Discussion
Appellate review of a trial court's order to grant a motion to dismiss is de novo. Fenlon v. Union Elec. Co., 266 S.W.3d 852, 854 (Mo. App. E.D. 2008). A motion to dismiss for failure to state a claim tests only the adequacy of the petitioner's claim. Id. In doing so, all facts alleged in the petition are assumed to be true, and any resulting inferences are liberally construed in favor of the petitioner. Bosch v. St. Louis Healthcare Network, 41 S.W.3d 462, 463 (Mo. banc 2001) (quoting Nazeri v. Missouri Valley College, 860 S.W.2d 303, 306 (Mo. banc 1993) ). The function of the petition is to "invoke substantive principles of law entitling [petitioner] to relief and ... ultimate facts informing the [respondent] of that which [petitioner] will attempt to establish at trial." State ex rel. Henley v. Bickel, 285 S.W.3d 327, 329 (Mo. banc 2009) (citation omitted). It is not the function of this Court, or the motion court, to determine on the merits whether the petitioner is entitled to relief. Fenlon, 266 S.W.3d at 854.
Section 452.375.5 authorizes a cause of action for individuals seeking third-party rights to custody or visitation of a minor child. K.M.M. v. K.E.W., 539 S.W.3d 722, 735-36 (Mo. App. E.D. 2017) (citing In re T.Q.L., 386 S.W.3d 135, 140 (Mo. banc 2012) ). This action is not intended to be an avenue to custody or visitation rights available to "any third party that comes along." Id. at 617 (quoting McGaw v. McGaw, 468 S.W.3d 435, 447 (Mo. App. W.D. 2015) ). Rather, Section 452.375.5 has been consistently held to apply to individuals who have, for a substantial period and to a substantial degree, fulfilled the role of *398 a primary parent to a child, most especially when they have done so at the behest of that child's natural parent. See McGaw, 468 S.W.3d at 447-48 ; Flathers v. Flathers, 948 S.W.2d 463, 471-72 (Mo. App. W.D. 1997) ; T.Q.L., 386 S.W.3d at 140 ; Bowers v. Bowers, 543 S.W.3d 608, 616 (Mo. banc 2018) ; K.M.M., 539 S.W.3d at 736-37. In other words, Section 452.375.5 does not provide a means by which any and all relatives and caretakers of a minor child may seek custody or visitation, but rather a means by which individuals with a "significant bond[ed] familial custodial relationship" not otherwise recognized by law may seek a right to meaningful contact with the child. K.M.M, 539 S.W.3d at 738 ; see also Hanson v. Carroll, 527 S.W.3d 849, 854 (Mo. banc 2017) (legislature intended Section 452.375.5(5)(a) as "alternative consideration to parental custody").
In evaluating a claim under Section 452.375.5, a court must begin with the presumption the natural parent or parents are fit and suitable to make decisions consistent with the child's welfare and best interests, including decisions about with whom the child should have contact. Flathers, 948 S.W.2d at 466. In order to rebut this presumption, the petitioner has the burden of demonstrating the parent or parents against whom the action is brought are unfit, unsuitable, or unable to be a custodian or the welfare of the child requires custody or visitation rights vest with the petitioner. K.M.M., 539 S.W.3d at 736. Only after a petitioner has rebutted the parental presumption under either the "fitness" or "welfare" prong does the court examine whether an award of third-party custody or visitation is in the child's best interests, and whether the petitioner can provide a suitable and stable environment for the child. Id.
Appellant argues his petition satisfies the requirements of both the "fitness" and "welfare" prongs of the test. In support of the "fitness" prong, the Amended Petition alleges both E.K.'s biological parents are unfit custodians: E.K.'s biological father because he has been completely absent from the child's life since impregnating Respondent through a non-consensual sexual encounter, and Respondent because she has denied Appellant contact with E.K. since she and Appellant separated.[2] We consider whether the facts pled in the Amended Petition show Respondent is an unfit caretaker for the purposes of rebutting the parental presumption under Section 452.375.5.
In support of his argument that the "fitness" prong is met solely by Respondent's denying him contact with E.K., Appellant cites to Bowers v. Bowers, 543 S.W.3d 608 (Mo. banc 2018). Bowers involved a dispute between a once-married couple over the custody of a child born before their marriage as a result of the mother's romantic involvement with another individual. Id. at 610. After dissolution of the marriage, the mother contacted the child's biological father and encouraged him to pursue custody of the child over her ex-husband. Id. at 611. The petitioner filed for third-party custody under Section 452.375.5. Id. During the pendency of the proceedings, mother took a number of actions the court found objectionable, including attempts to alienate the child from petitioner. Id. at 612. Several of these actions *399 were directly contrary to orders the court had imposed on the mother. Id. After a hearing on the merits, the court found mother to be an unfit parent, because she had (1) disregarded the child's medical needs; (2) withheld visitation from petitioner; (3) required a specific court order before allowing meaningful contact between the child and petitioner; (4) intended to remove the child from her current school; (5) diminished or excluded petitioner from the child's life; (6) consistently placed her own interests ahead of the child's in a way that called into question her willingness and ability to function as a mother; and (7) was incapable of co-parenting with the petitioner. Id. at 615.
In the present case, Appellant's Amended Petition does not allege Respondent fails to provide needed medical care, makes poor decisions with regard to E.K.'s education, or places her own needs above the child's. The only allegation of unfitness is Respondent's denial of Appellant's contact with E.K. While the denial of contact with the child was one of several factors in the court's decision in Bowers, there was an order by the court directing mother to allow contact with that petitioner, which mother was contravening. There is no such order in place here. Without some further allegation of unfitness, merely withholding contact with an individual for whom contact is not established as a matter of right is insufficient to meet the "fitness" prong of the third-party custody test.
Appellant's Amended Petition fails to satisfy the "fitness" prong. The question remains whether it satisfies the "welfare" prong in the alternative. The "welfare" prong was recently examined by this Court in K.M.M. v. K.E.W., 539 S.W.3d 722 (Mo. App. E.D. 2017). "To successfully rebut the parental presumption on the 'welfare' basis, there must be proof of a special or extraordinary circumstance rendering it in the child's best interest to award custody to a third party." K.M.M., 539 S.W.3d at 736 (citations omitted). In this context, "special or extraordinary circumstances" means "a significant bond[ed] familial custody relationship" such that it is in the child's best interest to award custody or visitation to a third party. McGaw, 468 S.W.3d at 443 (quoting Flathers, 948 S.W.2d at 470 ). The analysis required to determine whether this prong is met is highly fact-sensitive. Flathers, 948 S.W.2d at 470.
When examining the depth and quality of the familial custody relationship present in K.M.M., this Court found it significant both parties and the children shared a home, commingled finances, and discussed future plans for their family. K.M.M., 539 S.W.3d at 737. This Court also noted the petitioner played an active role in caring for the child and the mother, both during the pregnancy and afterwards. Id. at 737-38. The petitioner had been present during delivery, had formed a parental bond with the child, and had been actively encouraged to do so by the child's natural mother. Id. at 738.
Appellant alleges in his Amended Petition this kind of bonded familial relationship exists between him and E.K. Taking all facts pled in the Amended Petition as true, like the couple in K.M.M., Appellant, Respondent, and E.K. shared a home together. Appellant provided for E.K.'s needs financially, as well as making payments towards the shared home purchased in Respondent's name. Appellant alleges he and Respondent were engaged for some time and planning a wedding. Appellant states he was present and provided care during Respondent's pregnancy and after E.K.'s birth. He claims he was present during the delivery and helped pick out E.K.'s name. As stated in the Amended Petition, the bond formed between Appellant *400 and E.K. is that of parent and child, and E.K. has suffered emotionally since their separation. The facts which Appellant pleads are sufficient to satisfy the "welfare" prong of Section 452.375.5.
Having satisfied the "welfare" prong, the next step of the analysis is whether an award of custody or visitation would be in the child's best interests, and whether Appellant is a suitable custodian able to prove an adequate and stable environment for E.K. See T.Q.L., 386 S.W.3d at 139.
With regard to the child's best interests, Section 452.375.2 provides relevant factors the court is to consider, which include but are not limited to:
(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;
(2) The needs of the child for a frequent, continuing, and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;
(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;
(4) Which parent is more likely to allow the child frequent, continuing, and meaningful contact with the other parent;
(5) The child's adjustment to the child's home, school, and community;
(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved....;
(7) The intention of either parent to relocate the principal residence of the child; and
(8) The wishes of a child as to the child's custodian.
As noted above, this list is not exhaustive, and per the statute a court has wide discretion to examine other factors in determining the child's best interests. As we have also noted, there is necessarily a good deal of overlap between facts considered under the "welfare" prong and the best interest analysis. K.M.M., 539 S.W.3d at 737. As stated above, Appellant's Amended Petition pled sufficient facts to meet the "welfare" prong of Section 452.375.5; it also pled sufficient facts to show it would be in E.K.'s best interests to allow some custody or visitation for Appellant. We point chiefly to the facts alleged in the Amended Petition that indicate an important emotional bond has formed between Appellant and E.K., the difficultly E.K. has had adjusting to the absence of the man she knew as her father, Respondent's unwillingness to allow a relationship between Appellant and E.K., and E.K.'s relationship with Appellant's relatives.
Finally, we reach the question of whether the facts in the Amended Petition establish Appellant would be a suitable custodian. The Amended Petition avers facts showing Appellant has been a suitable and dedicated custodian from the beginning of E.K.'s life. It further avers Appellant would continue to play this role, should he be afforded the chance. These allegations are sufficient to meet this element of the third-party custody claim. See T.Q.L., 386 S.W.3d at 140.
Appellant's Amended Petition adequately pled a cause of action for third-party custody. Accordingly, we find the trial court erred when it granted Respondent's motion to dismiss on the basis the Amended Petition failed to state a claim upon which relief may be granted. In so holding, we do not purport to resolve the underlying factual disputes of the case, which are substantial. As we note above, it is not the function of this Court, nor is it the function *401 of the motion court, to determine on the merits whether Appellant is entitled to relief when considering a motion to dismiss. Fenlon, 266 S.W.3d at 854. "A motion to dismiss for failure to state a claim assumes that all averments in plaintiff's petition are true and tests only the adequacy of plaintiff's petition." Id. (citation omitted).
In her brief, Respondent does not challenge the sufficiency of Appellant's Amended Petition to state a claim for third-party custody. Rather, Respondent argues that, despite the order stating otherwise, ruling on a motion to dismiss for failure to state a claim was not what the motion court was actually doing. Instead, Respondent argues the motion court appears to have considered evidence outside of the pleadings, and in so doing converted the proceedings into a motion for summary judgment.
In support of her argument, Respondent points to Rule 55.27[3] , which states, in relevant part:
If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 74.04. All parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 74.04.
Respondent claims matters outside of the facts alleged in the Amended Petition were presented to the motion court, and were not excluded from its consideration. Specifically, Respondent points to the single exhibit attached to the Amended Petition when it was filed with the motion court, and the testimony and other evidence presented to the motion court at the hearing on the motion to dismiss.
Although the motion court does not mention considering facts outside of the pleadings, the record strongly suggests it did so. As stated above, Respondent called her motion to dismiss for a hearing. However, at that hearing there was no argument made regarding the legal sufficiency of Appellant's Amended Petition to state a claim for third-party custody. Instead, the hearing was comprised entirely of Appellant and Respondent themselves testifying about the substantive facts underlying Appellant's claim, and presenting evidence in an effort to bolster their many conflicting claims of material fact. From the record, it appears as though the hearing was actually a trial on the substantive merits of the claim. Given these inconsistencies, it is unsurprising there remains some confusion as to what the motion court was and was not considering when granting Respondent's motion.
Rule 55.27 does allow a court to treat a motion to dismiss as a motion for summary judgment when the moving party includes matters outside the pleadings for the court to consider. However, in doing so the court is obligated to require the parties to adhere to the mandatory directives of Rule 74.04, which governs motions for summary judgment. Schnurbusch v. W. Plains Animal Shelter, 507 S.W.3d 675, 679-80 (Mo. App. S.D. 2017). As the Western District of this Court recently explained:
Rule 74.04(c)(1) sets forth the requirements for filing a motion for summary judgment which includes: (1) the filing of a statement of uncontroverted facts stated with particularity and in numbered paragraphs, (2) the attachment of a copy of all discovery, exhibits or affidavits *402 on which the motion relies, and (3) the filing of a separate legal memorandum explaining why summary judgment should be granted. The rule further requires a response, to be filed within thirty days, that sets forth each statement of fact in its original paragraph number and immediately thereunder admit or deny each of movant's factual statements. The rule prohibits a denial from resting upon the mere allegations or denials of the party's pleading but rather requires the response to support each denial with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial. The respondent is also allowed to set forth additional material facts that remain in dispute.
These procedural requirements are not to be taken as idle suggestions. The underlying purpose of Rule 74.04 is directed toward helping the court expedite the disposition of the case. Because of this fact, compliance with the rule is mandatory. Summary judgment is based on the underlying predicate that, where the facts are not in dispute, a prevailing party can be determined as a matter of law. The procedures of Rule 74.04 were developed to establish a step-by-step method by which such cases can be identified and resolved. The failure of the parties to adhere to the text of the rule robs it of its usefulness. It is not the function of the circuit court or appellate court to sift through a voluminous record in an attempt to determine the basis for the motion. Rather, a motion for summary judgment is required to follow a specific format in order to clarify the areas of dispute and eliminate the need for the trial or appellate court to sift through the record to identify factual disputes. Such rationale is equally applicable to a motion to dismiss that has been converted to a motion for summary judgment.
Energy Creates Energy, LLC v. Heritage Group, 504 S.W.3d 142, 147-48 (Mo. App. W.D. 2016) (internal citations, quotation marks and alterations omitted) (emphasis added). Here, we confront precisely the same problem as did the court in Energy Creates Energy; at no point in the course of this case did the motion court give notice it was converting the motion to dismiss into a motion for summary judgment or direct the parties to comply with Rule 74.04's procedural requirements, leaving the record insufficiently developed to review anything beyond the Amended Petition itself.
We are aware of several Missouri cases, some of which are cited by Respondent, which allow for automatic conversion of a motion to dismiss regardless of whether "the circuit court characterizes its ruling as a dismissal." Weems v. Montgomery, 126 S.W.3d 479, 482 (Mo. App. W.D. 2004). To the extent Missouri courts have chosen to overlook such procedural infirmities in instances where the trial court purported to grant a motion to dismiss, this would seem at odds with direction from the Missouri Supreme Court, which has held:
[Materials outside the pleadings] may be considered only if the trial court converts the motion to one for summary judgment and provides notice that it is doing so. If the trial court gives no such notice and the judgment expressly grants the motion to dismiss, this is an affirmative statement that the trial court did not convert the motion and, more importantly, that it did not consider matters outside the pleadings. Appellate courts are bound by such statements and, as a result, cannot consider extraneous submissions or review decisions the trial court did not make.
*403 Naylor Senior Citizens Housing, LP v. Side Const. Co., Inc., 423 S.W.3d 238, 241 n.1 (Mo. banc 2014) (internal citations omitted). When, as here, the trial court gives no notice of conversion to summary judgment, and expressly grants the motion to dismiss, this Court is bound to limit its review to the sufficiency of the petitioner's pleadings. See also Underwood v. Kahala, LLC, 554 S.W.3d 485, 494 (Mo. App. S.D. 2018).
Of the cases supporting automatic conversion from a motion to dismiss into a motion for summary judgment cited in Respondent's brief, none support the proposition that when, as here, the "failure to follow the requirements of Rule 74.04 leaves the factual record insufficiently developed," we must nonetheless sift through the record to divine the basis of the summary judgment the motion court did not claim to have granted. Energy Creates Energy, 504 S.W.3d at 149. As a practical matter, the trial court may allow parties to "waive" all sorts of procedural requirements and deliver a ruling on whatever basis it desires. But when such "waiver" renders the record unreviewable, or works some manifest injustice or denial of due process on one or another party, the allowance of waiver becomes error, and is not binding on the appellate court. See Id. at 149 n.7.
Here, because the motion court did not mandate compliance with the procedural requirements of Rule 74.04, there is no record of which facts were supposedly uncontroverted for this Court to review. As in Energy Creates Energy, "[d]eviation from these procedural requirements has produced a record that is lacking a statement of uncontroverted facts and a proper response from the non-moving party, rendering a full de novo review of the merits of the motion prohibitively difficult if not outright impossible by this court." Id. at 149.
The lack of clarity from the record reinforces our decision to reverse the judgment of the motion court. "Emphatically, it should not be unclear whether the trial court has converted a motion to dismiss into a motion for summary judgment. The proceedings are distinct, and enforcement of the distinctions is mandatory. If it is difficult for the reviewing court to discern what the trial court was doing, it was at least as difficult for the parties, and it casts doubt as to the trial court's enforcement of the rules." Underwood, 554 S.W.3d at 494 n.13 (emphasis in original). Appellant claims to have suffered prejudice resulting from the lack of clarity in these proceedings. He points to his missed opportunity to conduct full discovery and present his entire case at a trial on the merits. He also points to the motion court's decision to defer the appointment of a guardian ad litem to investigate E.K.'s interests until after the hearing on the motion to dismiss - a hearing at which evidence of the substantive facts underlying the claim were presented, without the benefit of a guardian ad litem's input.
Even if we were to review this case as a motion for summary judgment as Respondent urges, she does not adequately explain how the outcome would be different. "Great caution must be exercised in granting summary judgment as it 'borders on denial of due process.' " King General Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints, 821 S.W.2d 495, 499 (Mo. banc 1991) (quoting Y.G. v. Jewish Hospital of St. Louis, 795 S.W.2d 488, 494 (Mo. App. E.D. 1990) ). Summary judgment is appropriate only where the record demonstrates there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law, and we review an order for *404 summary judgment in the light most favorable to the non-moving party. Schnurbusch, 507 S.W.3d at 680 (citation omitted). "A genuine issue of fact exists where the record contains competent evidence that two plausible but contradictory accounts of essential facts exist." Geary v. Mo. State Employees' Retirement Sys., 878 S.W.2d 918, 921 (Mo. App. W.D. 1994) (citation omitted). The testimony of the parties at the hearing on the motion to dismiss reveals myriad disputes as to material facts central to Appellant's claim, which would likely have made granting summary judgment error, even if the motion court had required compliance with Rule 74.04.
In granting Respondent's motion to dismiss, the trial court was obligated to consider only the sufficiency of Appellant's Amended Petition to state a claim upon which relief may be granted; in the alternative, the trial court may consider matters outside of the petition, and in so doing convert the motion to dismiss into a motion for summary judgment. Rule 55.27(a). If it does so, it is required to follow the procedural requirements of Rule 74.04, which are mandatory. Underwood, 554 S.W.3d at 494 (citing Margiotta v. Christian Hosp. NE NW, 315 S.W.3d 342, 344 (Mo. banc 2010) ). There is no hybrid "summary judgment lite" the trial court is at liberty to construct by following some procedures and disregarding others. Id.
As previously stated, Appellant's Amended Petition stated a colorable claim for third-party custody under Section 452.375.5. Accordingly, the motion court erred when it granted Respondent's motion to dismiss the Amended Petition. We do not reach Appellant's second point, as resolution of his first point resolves this appeal entirely.
Conclusion
The judgment of the motion court is reversed, and the cause is remanded for further proceedings consistent with this opinion.
Lawrence E. Mooney, J., and James M. Dowd, J., concur.

All statutory references are to RSMo Cum. Supp. 2013 unless otherwise noted.

The man alleged to be E.K.'s biological father, Jeffrey Uetrecht, does not appear on E.K.'s birth certificate as her father. Respondent claims to have had no contact with him since obtaining a restraining order against him after the encounter that led to her pregnancy. It appears from the record a summons was issued but never served on him. Given his absence from the substantive proceedings, and because it is unnecessary to the resolution of this claim, we do not evaluate his fitness as a parent.

All rule references are to Mo. R. Civ. P. (2017).