

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| ELAINE PAYNE, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD86003 |
| | ) | |
| LINDSEY R. NILSSON AND | ) | |
| JOSHUA D. PLATZ, | ) | Filed:  November 21, 2023 |
| | ) | |
| Appellants. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF ADAIR COUNTY
### THE HONORABLE THOMAS P. REDINGTON, JUDGE

### BEFORE DIVISION THREE: LISA WHITE HARDWICK, PRESIDING JUDGE, KAREN KING MITCHELL, JUDGE, AND CYNTHIA L. MARTIN, JUDGE

Lindsey Nilsson and Joshua Platz (individually, "Mother" and "Father," collectively, "Parents") appeal from the circuit court's judgment awarding third-party visitation with their child ("Child") to Child's maternal grandmother ("Grandmother"). Parents contend Grandmother lacked standing, her petition failed to state a claim, and the evidence was insufficient to support her claim.  Because the evidence was insufficient to prove Child's welfare requires that Grandmother receive third-party visitation, the judgment is reversed.

## FACTUAL AND PROCEDURAL HISTORY

Child was born in January 2017 to Parents, who were not married and live in Kirksville.  Father filed a paternity action, and in February 2019, the court entered a judgment finding the existence of the father-child relationship.  In the paternity judgment, the court adopted in its entirety Parents' agreed-upon joint parenting plan, which provided that Parents have joint legal and joint physical custody of Child and set forth a residential, holiday, and vacation schedule allowing parents roughly equal parenting time with Child.

Grandmother, who lives in the St. Louis area, was present at Child's birth and had regular visits with Child, both alone and with Parents present.  After Mother and Grandmother got into an argument in December 2021, Parents stopped allowing Grandmother in-person contact with Child.  Father facilitated regular weekly FaceTime calls between Grandmother and Child "for some time" after that, until Grandmother reported Mother and Father to the Department of Social Services over the condition of Child's teeth.  The Department responded to Mother's and Father's homes and determined that no further investigation was necessary.  Child had surgery to address his teeth issue.

Grandmother filed a petition for third-party visitation with Child in May 2022.  In her petition, she alleged that, from Child's birth in January 2017 until approximately January 2022, she had regular and continuing contact with Child such that she formed a special relationship with him.  She alleged that Parents' denial of contact between her and Child was arbitrary, capricious, and in direct retaliation for her complaints that Child's

2

medical needs were not being addressed.  She further alleged that Child's welfare requires that she be allowed to maintain a relationship with him by having in-person visitation as set forth in her proposed parenting plan.  Grandmother's proposed parenting plan sought visitation with Child at her home one weekend a month, two weeks in the summer, and six days to extend weekends in the summer.  Neither Mother nor Father filed a responsive pleading.  While counsel for Father entered an appearance for Father, Mother did not retain counsel.  During a trial setting hearing, at which Father appeared by counsel but Mother did not, Grandmother and Father made a joint oral motion to consolidate Grandmother's third-party visitation action with Father's prior paternity action.  The court granted the motion and consolidated the actions.  On Grandmother's motion, the court also entered an interlocutory order of default against Mother.

A bench trial was held.  Father appeared with counsel and Mother appeared without counsel.  Grandmother testified as the only witness on her behalf, while Father and Mother testified on Father's behalf.  Following the trial, the court entered its judgment awarding Grandmother third-party visitation with Child.  The court entered a parenting plan ordering that Grandmother have unsupervised visitation with Child at her home in St. Louis one weekend every other month, coinciding with Mother's first weekend visit every other month, beginning in January 2023.  The court also ordered that Grandmother have one week of visitation in the summer.  Parents appeal.[1]

---

[1] Although the court entered an interlocutory order of default against Mother prior to trial, the final judgment did not indicate that it was a default judgment against Mother.  We need not determine whether it was a default judgment against Mother and, if so, whether she had the right to appeal it without first filing a motion to set it aside because Father was not found in default.

## STANDARD OF REVIEW

We review the judgment in this court-tried case under the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Bowers v. Bowers*, 543 S.W.3d 608, 613 (Mo. banc 2018). Accordingly, we will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32.

## ANALYSIS

Because it is dispositive, we will address Parents' Point III first. In Point III, Parents contend the circuit court erred in granting Grandmother third-party visitation because the evidence that Child's welfare requires such visitation was insufficient.[2] In reviewing the sufficiency of the evidence, we view the evidence and all reasonable inferences therefrom in the light most favorable to the judgment, disregard all contrary evidence and inferences, and defer to the circuit court's credibility determinations. *Bowers,* 543 S.W.3d at 613.

Grandmother sought visitation with Child pursuant to Section 452.375.5(5),[3] which authorizes a cause of action for persons seeking third-party custody or visitation

---

Mother and Father share joint physical custody over Child; therefore, our decision to reverse the judgment awarding Grandmother third-party visitation, even if only on Father's appeal, will necessarily reverse the judgment for Mother as well.

[2] Grandmother incorrectly asserts Parents' failure to challenge the sufficiency of the evidence on the welfare requirement during the trial rendered this issue unpreserved and not reviewable on appeal. "The question of the sufficiency of the evidence to support the judgment may be raised whether or not the question was raised in the trial court." § 510.310.4, RSMo 2016.

[3] All statutory references are to the Revised Statutes of Missouri 2016, as updated by the 2021 Cumulative Supplement.

4

with a minor child. *Conoyer v. Kuhl*, 562 S.W.3d 393, 397 (Mo. App. 2018). An action under this statute, however, "is not intended to be an avenue to custody or visitation rights available to any third party that comes along." *K.T.L. by Next Friend K.L. v. A.G.*, 648 S.W.3d 110, 114 (Mo. App. 2021) (citation omitted). "Rather, Section 452.375.5 has been consistently held to apply to individuals who have, for a substantial period and to a substantial degree, fulfilled the role of a primary parent to a child, most especially when they have done so at the behest of that child's natural parent." *Conoyer*, 562 S.W.3d at 397-98. Indeed, the statute is not "a means by which any and all relatives and caretakers of a minor child may seek custody or visitation, but rather a means by which individuals with a significant bonded familial custodial relationship not otherwise recognized by law may seek a right to meaningful contact with the child." *Id*. at 398 (internal quotation marks and citations omitted).

In evaluating a third-party custody or visitation claim under Section 452.375.5, the court begins with the "rebuttable presumption that the natural parent is fit and suitable to make decisions consistent with the child's welfare and best interests." *K.T.L.*, 648 S.W.3d at 114-15. To rebut this presumption, the petitioner must demonstrate either that: (1) "each parent is unfit, unsuitable, or unable to be a custodian," or (2) "the welfare of the child requires it." § 452.375.5(5)(a). If the petitioner proves one of these grounds, the petitioner must then prove that third-party custody or visitation is in the child's best interests. *Id*. If the petitioner fails to prove either the fitness or welfare ground, "the question of the child's best interests is never reached." *Jones v. Jones*, 10 S.W.3d 528, 535-36 (Mo. App. 1999).

5

Here, Grandmother alleged in her petition that Child's welfare requires that she be awarded third-party visitation. In its judgment, the court made no findings regarding whether Child's welfare requires third-party visitation but found only that it would be in Child's best interests to have regular contact with Grandmother and that Parents presented no evidence that regular visits with Grandmother would be harmful to Child.

We recognize that neither party requested findings of fact and conclusions of law and that we are to consider all fact issues on which no specific findings were made as having been found in accordance with the result. Rule 73.01(c). Nevertheless, to the extent that the court's judgment could be interpreted as equating the terms "welfare" and "best interests" in Section 452.375.5(5)(a) and concluding that a finding that third-party visitation is in the child's best interest is alone sufficient to award third-party visitation, it is erroneous. *T.W. ex rel. R.W. v. T.H.*, 393 S.W.3d 144, 150 (Mo. App. 2013). The welfare and best interests findings "are separate and distinct findings, and 'welfare' implicates pleading and proving special or extraordinary circumstances that make third-party custody or visitation in the child's best interest." *Id.*[4]

Grandmother asserts she did not have to present any evidence that Child's welfare requires she receive visitation because Mother and Father conceded this. She first argues

---

[4] The findings necessary to award third-party visitation under Section 452.375.5(5)(a) are different from the findings necessary to award grandparent visitation under Section 452.402. "Section 452.402 allows the court to grant reasonable visitation rights to the grandparents of the child upon a finding that visitation with grandparents is in the child's best interests." *Aldridge v. Martin*, 667 S.W.3d 612, 616 (Mo. App. 2023) (internal quotation marks and citation omitted). Grandmother could not seek grandparent visitation under Section 452.402 because Child's and Parents' circumstances did not fall under any of the categories set forth in Section 452.402.1(1)-(3).

6

Parents made judicial admissions during their trial testimony. "A judicial admission is an act by a party, which in effect concedes a particular proposition to be true for the purposes of the judicial proceeding. The admission acts as a substitute for evidence relative to the subject matter of the admission." *Daugherty v. Allee's Sports Bar & Grill*, 260 S.W.3d 869, 873 n.1 (Mo. App. 2008) (citation omitted). The statements that Grandmother insists constituted judicial admissions were Father's testimony that he was not opposed to Grandmother's having contact with Child, but he wanted any visits to restart slowly, one weekend every other month, and to occur in Kirksville, and Mother's testimony that she was agreeable to Grandmother having supervised visits with Child in Kirksville. Parents' testimony about their wishes for Grandmother's possible future contact with Child cannot reasonably be interpreted as specific definitive statements by Parents that Child's welfare requires that Grandmother receive third-party visitation. *Id.* at 874.

Grandmother next argues Parents admitted that Child's welfare requires that she receive visitation because they failed to file a responsive pleading to her petition. She notes that Rule 55.09 states that all averments in a petition are admitted when a responsive pleading is required but not filed. However, "the failure to file an [a]nswer is effective as an admission only if the plaintiff has objected to such failure." *Pulaski Bank v. C.W. Holdings, LLC*, 488 S.W.3d 221, 226 (Mo. App. 2016) (citations omitted). Thus, while the filing of an answer is mandatory, "this requirement is waived unless the opposing party requests enforcement of the mandate by timely and proper action," such as by seeking a default judgment or judgment on the pleadings. *Id.* (citations omitted).

7

In this case, Grandmother sought and received an interlocutory order of default against Mother, but she did not take any action with regard to Father's failure to file an answer. Therefore, Grandmother waived any argument that Father admitted this allegation in her petition, and she still needed to prove at trial that Child's welfare requires she receive third-party visitation.

The evidence at trial on this issue was that Grandmother initially had contact with Child every couple of weeks for three or four days at a time after Child's birth. After Mother and Father ended their relationship, Grandmother visited Mother and Child more frequently. Grandmother also had visits with Child at her home. In the summer of 2021, Child stayed with Grandmother in St. Louis for two weeks without Mother or Father being present. On other occasions, Mother stayed with friends and left Child with Grandmother to give Child and Grandmother one-on-one time. During her visits with Child, Grandmother engaged Child in numerous educational and recreational activities, including making crafts, playing music, coloring, playing outdoors, visiting neighbors, swimming, and going to museums and other attractions in the St. Louis area. Grandmother has a special bond with Child, who is her only grandchild, and she gives him her undivided attention when he is with her.

The record established that Grandmother and Child have a close grandparent-grandchild relationship and that Grandmother's participation in Child's life is beneficial to Child. Evidence that Grandmother's presence in Child's life positively affects his welfare, however, does not, by itself, prove that her absence would negatively affect it. That Child's life may be enriched by having Grandmother in it does not rise to the level

8

of a special or extraordinary circumstance such that Child's welfare *requires* that Grandmother receive third-party visitation under Section 452.375.5(5)(a). Grandmother failed to rebut the presumption that Parents are capable of making decisions regarding her visitation with Child that are consistent with Child's welfare and best interests.

Grandmother argues that "the level of specialness or extraordinariness would be at a lower level in instances where a third party is merely seeking visitation compared to a case where the third party is attempting to take custody away from a natural parent," Section 452.375.5(5)(a) does not make a distinction between the standard for granting third-party custody and the standard for granting third-party visitation. To adopt Grandmother's argument, we would have to add words to the statute, which we "cannot do under the guise of statutory interpretation." *State ex rel. Bailey v. Fulton*, 659 S.W.3d 909, 913 n.3 (Mo. banc 2023).

Because the evidence was insufficient to support the court's finding that Child's welfare requires that Grandmother receive third-party visitation, the circuit court's judgment is reversed. Point III is granted. Our ruling on Point III renders it unnecessary to decide Points I and II, in which Parents contend Grandmother lacked standing and failed to state a claim.

## CONCLUSION

The judgment is reversed.

_____
LISA WHITE HARDWICK, JUDGE

All Concur.

9